Staples, J.
The plaintiff in the court below, who is the defendant in error here, is the holder of four notes or certificates of indebtedness, executed by the town of Dan-ville in 1863, amounting in the aggregate to twelve thousand dollars, and maturing ten and twenty years after date, with interest thereon, payable semi-annually. In the year 1868 the plaintiff instituted actions of trespass on the case in the Circuit court of Danville, for the recovery of the interest which had accrued upon these notes from the 1st *day of January 1865, to the 1st day of January 1868. The cases were subsequently removed to the Circuit court of Richmond. At the June term 1873 of that court, the defendant, in addition to the general issue, tendered two pleas of usury in writing, which, on motion of the plaintiff, were rejected; and the defendant excepted.
After the rejection of these pleas, it was agreed by the parties that a jury should be waived, and all matters of law and of fact submitted to the court upon the facts agreed: whereupon the court rendered judgment for the plaintiff. To that judgment a writ of error was awarded by a judge of this court.
The chief, if not the only question for our determination, is the right of the town of Danville to rely upon the defence of usury in these actions. The decision of that question depends upon an act passed March 22d, 1873, and found in the Revised Code of 1873, page 544. It is in these words: ‘ ‘No corporation shall hereafter interpose the *270 defence of usury in any action; nor shall any bond, note, debt or contract of such corporation be set aside, impaired or adjudged invalid by reason of anything contained in the laws prohibiting usury.” It is claimed by the counsel for the defendant, that this section applies only to causes of action arising, and contracts made, after its adoption; and consequently, the notes or certificates in controversy are not embraced by its provisions. The learned counsel relies strongly upon the well settled rule, that statutes are to be construed as prospective in their operation, unless the language plainly shows the intention of the legislature that they should have a retrospective effect. In support of this view he has cited numerous authorities, which undoubtedly sustain the proposition that the courts will not so construe *a statute as to give it a retrospective operation, unless there is something on the face of the enactment putting it beyond a doubt that such was the purpose of the legislature. Upon this point there can be no solid ground for controversy. The question is, whether the present enactment furnishes unmistakable evidence of the legislative purpose to give it a retroactive operation and effect.
It will be observed that the words used are very comprehensive. ‘‘No corporation shall hereafter interpose the defense of usury in any action.” The words, “any action, ’ ’ necessarily include suits instituted before as well as after the passage of the act. There is nothing in the context to give them a more limited operation. The defense is prohibited in all cases. In order to adopt the construction insisted on by the defendant, other words must be incorporated into the body of the act so as to make it read, “no corporation shall hereafter interpose the defense of usury in any action upon a contract hereafter made.” But clearly the legislature did not intend so to confine the effect of the enactment. Had such been the purpose, nothing would have been easier than to have used words appropriate to that object. If any doubt upon this point existed, it will be removed by reference to the next clause in the same section: “Nor shall any bond, note or debt, or contract of such corporation, be set aside, impaired or adjudged invalid by reason of anything contained in the laws prohibiting usury.” No distinction is made between contracts entered into before and after the statute: whenever made, they shall not be adjudged invalid by reason of anything contained in the usury laws. The legislature having thus declared, in the most unequivocal terms, that no contract of a corporation *shall be deemed invalid because it may be usurious, it is impossible for the courts, without the grossest perversion of language, to hold that those contracts only are meant which are entered into after the law is passed.
It must not be forgotten that the first clause of the section, already quoted, is a literal copy of a New York statute upon the same subject. The identity of language, used in both statutes, shows that the framers of our act had before them the New York law, and intended to adopt it without change or qualification. In Curtis v. Leavitt, 15 New York R. 1, a very noted case, this statute received a very careful consideration. All the judges agreed in giving it a retrospective effect, so that securities, to an amount exceeding a million of dollars, were held to be valid, though utterly void when issued, by reason of the usurious taint with which they were infected.
It is not to be supposed that the legislature incorporated into our laws an important statute of another state in entire ignorance of the interpretation given to it by the courts of that state. It must be presumed rather, that the legislature in adopting the precise phraseology, intended to adopt along with it the interpretation also.
I shall have occasion hereafter to refer to a number of cases in other states involving the constitutionality of statutes giving validity to antecedent usurious contracts. The language of some of these statutes is certainly not more comprehensive than that of our act; and yet the courts there experienced no difficulty in giving them a retrospective operation and effect. The limits assigned to this opinion will not justify any citations of these statutes. I must therefore content myself with this simple reference to them, ^satisfied that upon examination they will sustain the view I have taken.
The learned counsel who argued the case here for the defendant referred to the 18th section of chapter 16, Code of 1860. The learned counsel obviousty did not attach much importance to this section, although it seems to have been relied upon elsewhere as decisive of the case. I do not give the exact words of the section, but it substantially provides that no new law shall be construed to repeal a former law as to any act done, or right accrued, under the former law, or in any way whatever to affect any act done, or right accrued, under the former law.
In construing this section, it is necessary to consider also the preceding one, which provides that this rule of construction shall not be adopted, if it would be inconsistent with the manifest intention of the legislature. In other words, the two sections taken together mean no more than that a new law shall not be construed to affect any right accrued under a former la w, unless such is the manifest purpose of the legislature. A rule of construction which would always prevail in regard to vested rights of a civil character independently of a'ny statutory enactment on the subject.
Now if the view already presented in regard to the statute of March 23, 1873, be correct, if that statute is plainly retroactive in its operation, and was so intended by the legislature, then the 18th section does not apply to it, because it would be inconsistent with the manifest purpose of the legislature to give it such application. To adopt any other rule would be to declare *271 that one legislature having adopted a general statutory rule of construction, no succeeding legislature is authorized to depart from that rule.
'x'It is worthy of observation that the provisions of the 18th section were taken from the revised statutes of New York and Massachusetts. The 35th section of the New York statutes, although not identical with the language of the 18th, is substantially the same in its operation and effect. That section, the 35th, was in force long anterior to the case of Curtis v. Dea-vitt, and yet the Supreme court of New York did not regard it sufficient to prevent the retroactive operation of their statute in relation to the defence of usury by corporations. As already stated, the first clause of our act is a literal copy of the New York statute.
Por these reasons I am satisfied that all contracts of corporations, whether entered into before or subsequent to the passage of the act in question, must be held to be comprehended by its provisions. Thus construed, is the act constitutional? This is the important question for our consideration. When this subject was first under discussion my own convictions were very decided that this legislation could not and ought not to be sustained, as applied to antecedent contracts. It seemed to me not only unjust, but contrary to the first principles of the constitution, for the legislature to attempt to divest a right accrued under existing laws; and it mattered but little whether it was a right to defeat an action or maintain it; to prevent a recovery or enforce it. And although no specific provision of the constitution could be shown expressly forbidding such legislation, it had the appearance of being repugnant to the entire spirit and scope of that instrument.
•Subsequent investigation has, however, satisfied me that my own views on this subject were in conflict *with the opinions of many able judges and commentators, and an imposing array of well considered cases.
The reasoning employed in these cases, though not always satisfactory, and the great weight of authority upon the subject, have at least created doubts and difficulties in my own mind which ought to be controlling in passing upon an act of the legislative department. A conscientious judge will not, in the face of a current of authorities, almost uniformly tending in the same direction, pronounce against the constitutionality of a law ttnless upon full examination his conviction is very clear that it is plainly repugnant to the constitution. When he finds himself opposed by a long array of distinguished names ; when he sees that the wisdom of the legislature and the learning of the judiciary are against him, he ought to retrace his steps, re-examine his ground, and ascertain, if possible, whether there is not some radical defect in the process of reasoning by which he has reached his conclusion. He should be careful to inquire whether indeed he is not substituting his own preconceived opinions of what may be right and proper in the particular case, as a rule or standard for the determination of a mere question of constitutional power. It should never be forgotten that the courts cannot deny validity to an act of the legislature, because it may seem to the judges that injustice has been done or sound policy disregarded. As has been well said, the judiciary cannot run a race of opinion with the law-making power upon points of right, reason and expediency. Cooley on Con. L. 168. Such an assumption would lead to dangerous conflicts of authority, and practically result in the absorption by the judiciary of the other great departments of the government.
*The legislature represents the sovereign authority of the people, except so far as restrictions are enforced by the constitution in express terms or by strong implication. We look to the constitution of the state not for grants of power but for limitations. When the prohibition is not found in the language of that instrument, or in its frame work and general arrangement, there is no solid ground to pronounce the enactment void. The infraction must be clear and palpable. In the language of Judge Marshall, the question whether a law be void for its repugnancy to the constitution is at all times a question of much delicacy, which ought seldom if ever to be decided in the affirmative in a doubtful case. The opposition between the constitution and the law should be such, that the judge feels a strong and clear conviction of their incompatibility with each other. Fletcher v. Peck, 6 Cranch R. 87, 128.
Bearing these principles in mind, we are to consider whether the statute already cited is repugnant to the constitution of the United States or of the state of Virginia. Two provisions of the constitution of the United States have been invoked as prohibitive of this sort of legislation. One of these is the clause declaring that no state shall pass any ex post facto law. In answer to this, it is sufficient to say, that the phrase ex post facto law, as used in the constitution, is not applicable to civil, but only to criminal and penal laws, which impose a punishment for previous acts which were not punishable at all when committed, or not punishable to the extent or in the manner prescribed. So that ex post facto' laws relate to penal and criminal proceedings which inflict punishment or forfeitures, and not to civil proceedings which affect private rights retrospectively,
*This doctrine has been solemnly settled by the Supreme court in numerous cases, and is now the accepted rule of construction. Calder v. Bull, 3 Dall. R. 386; Watson v. Mercer, 8 Peters R. 88, 110.
The other provision of the constitution relied upon is that which prohibits a state from passing any law impairing the obligation of a contract. It seems very clear, however, that the statute, so far from invalidating the contract, upholds and sus *272 tains it. In tHe case of Satterlee v. Matthewson, 2 Peters R. 380, Mr. Justice Washington, commenting upon an act of the Pennsylvania legislature to which the same objection was urged, said: “Now this law may be censured as an unwise and unjust exercise of legislative power, as retrospective in its operation, as the exercise by the legislature of judicial functions, and as creating a contract where none previously existed. All this may be admitted, but the great question which we are now considering is, does it impair the obligation of a contract? It is not easy to perceive how a law which gives validitj' to a void contract can be said to impair the obligation of that contract. It cannot be intended that to create a contract between the parties where none existed, and to impair one, mean the same thing.”
This case, and indeed all the cases, establish the position that even though a statute may take away vested rights by reason of its retrospective operation, it cannot, for that reason merely, be treated as repugnant to any provision contained in the constitution of the United States. Charles River Bridge v. Warren Bridge, 11 Peters E. 420. In considering this question then, I think we may safely discard from our view the constitution of the United States.
The next inquiry is as to the constitution of Virginia. *Is the statute in contravention of any of its provisions? I do not understand the learned counsel for the defendant as contending that the act in question violates any specific provision of that instrument. His proposition is substantially, that the contract here when made was usurious and void; and there was then vested in the defendant a right so to declare it; that by the statute now under consideration, he has been deprived of this right; that a law which thus takes away a valuable and a vested right is an exercise of arbitrary power, unjust in itself, and contrary to the fundamental principles of the social compact.
Now, let it be conceded there are restrictions upon the legislative power not found expressly enumerated in the constitution; that a law may not infringe upon any specific provision of that instrument and yet it may involve so flagrant an abuse of power that it is the imperative duty of the judiciary to interpose and arrest its execution ; still it must be also conceded that when we depart from the express limitations of the constitution, and venture into the vast and unexplored region of implied restrictions, the legislative usurpation ought to be very clear, palpable and oppressive to justify the interposition of the judiciary. All admit that it is not competent for the legislature by retroactive laws to interfere with vested rights. But the inquiry still recurs, what are these vested rights that are secure against legislative invasion; that the legislature has the constitutional power to pass retrospective laws, laws affecting vested rights, no one will deny who is familiar with the jurisprudence of the country. According to Chancellor Kent, statutes which go to confirm existing rights and in furtherance of the remedy, by curing defects *and adding to the means of enforcing existing obligations, have been held clearly valid, when just and reasonable, and conducive to the general welfare, even though they might in some degree infringe upon vested rights. 1 Kent’s Com., page 456; Underwood v. Lilly, 10 Serg. & Rawle 101; Tate v. Stooltzfoos, 16 id. 35; Bleakney v. F. and M. Bank, 17 id. 64; Hepburn v. Curts, 7 Watts R. 300; Foster v. Essex Bank, 16 Mass. R. 245; Oriental Bank v. Freeze, 18 Maine R. 109; Townsend, v. Townsend, Peck (Tenn.) R. 1; Bell v. Perkins, Peck’s R. 266; State v. Bermudez, 12 Louis. R. 352; Syracuse City Bank v. Davis, 16 Barb. R. 188; Rich v. Flanders, 39 N. Hamp. R. 304; Schenley v. Commonwealth, 36 Penn. State R. 29; Goshen v. Stonington, 4 Conn. R. 209; Wilkinson v. Leland, 2 Peters R. 627; Langdon v. Strong, 2 Verm. R. 234; Watson v. Mercer, 8 Peters R. 88.
In his work on constitutional limitation, Judge Cooley enumerates a number of retrospective statutes, the constitutionality of which is almost universally conceded. Among these are statutes validating antecedent illegal marriages, confirming city ordinances which had failed to take effect for want of registration, and by reason of. such confirmation establishing liens for tax assessment upon private property, statutes abolishing penalties and forfeitures, and taking away rights of appeal in pending cases; all of which, in a greater or less degree, interfere with vested rights. After citing these and other illustrations of retrospective laws, the author proceeds as follows: “On the same principle legislative acts validating invalid contracts have been sustained, when these acts go no farther than to bind a party by a contract which he has attempted to enter into, but which was invalid by reason of some personal inability on his part to make *it, or through neglect of some legal formality, or in consequence of some ingredient in the contract forbidden by law, the question which they suggest is one of policy and not of constitutional power.” Cooley, 373-’4.
In support of this view the learned author mentions a number of cases, some of which I shall have occasion to consider in the course of this opinion. One of the most important of these is the case of Curtis v. Leavitt, 15 New York R. 1, heretofore mentioned in another connection, justly celebrated, not only for the variety and importance of the questions involved and the magnitude of the subject of controversy, but for the vast ability and learning employed in the discussion by both bench and bar. Mr. Justice Page said p. 229: “The defence of usury is in the nature of a penalty or-forfeiture, and may at any time be taken away by the legislature in respect to previous as well as subsequent contracts, without trenching upon any vested rights. *273 A proposition that a party can have a vested right in enforcing a penalty or forfeiture, against which it is the office of a court of equity to relieve, is a legal solecism. Statutes of usury are highly penal in their character, and the defence of usury has always "been regarded as an unconscientious defence, and has never received the favor of either courts of law or equity.” All the judges sitting, seven in number, concurred substantially in this view. Among these were Judges Selden and Comstock, universally respected for their soundness of judgment and the extent and variety of their legal attainments. The former said: ‘ ‘Usury being a mere statutory defence, not founded upon any common law right, either legal or equitable, it was clearly within the power of the legislature to take it away.” See also Washburne *v. Franklin, 13 Abbott Prac. R. 140, and 35 Barb. R. 599.
The decisions of the Ohio courts are in entire harmony with those of New York. I do not deem it necessary, however, to do more than make a brief reference to the case of Lewis, trustee v. McElvin, 16 Ohio R. 347, 599. It seems that the Mechanics and Traders Bank of Cincinnati was an unauthorized banking company, and all bills and notes made for the purpose of being discounted there were declared to be unlawful and utterly void. The bank transferred all its assets to a trustee, including notes discounted there in violation of law. The legislature of Ohio passed an act authorizing the trustee to institute suit upon these notes in his own name against the debtors; and it was farther provided it should not be lawful for the debtors to set up in their defence that these notes were void on account of being in violation of any statute law of the state, or on account of their being contrary to public policy. It was objected that this legislation was unconstitutional, inasmuch as the effect would be to give validity to contracts illegal and void under laws in force when they were made. Hitchcock, J. speaking for the court said: “I can never consent to declare an act of the legislature void on account of violating the constitution, unless it is palpably both against the letter and spirit of that instrument. So long as there is the least doubt upon the subject the law must be enforced. Now what provision of the constitution of Ohio is violated by this law? Certainly it violates no contract. Its very object is, that the contract maybe enforced. But it is said to be a law retrospective in its character. I find nothing in the constitution prohibiting retrospective laws. The enactment *of ex post facto laws is prohibited, not retrospective. Such laws may be impolitic, but with this as a judge I have nothing to do. This law interferes with no vested rights. It merely compels men to do justice.”
The case of Parmelee v. Lawrence, decided by the Supreme court of Illinois, and reported in 48 Illinois R. 331, the case of Andrews v. Russell, 7 Blackf. R. 474, decided by the Supreme court of Indiana, and the case of Woodruff v. Scruggs, 27 Arkansas R. 26, all involved the constitutionality of statutes giving validity to antecedent usurious contracts. In each case the enactment was strongly assailed as trenching upon vested rights, and in each case its validity was fully sustained by the court.
The decisions of the Maryland courts accord with those already cited. Baugher v. Nelson, 9 Gill’s R. 299, is an example. In that case the point was made that the contract was void for usury, and there was vested in the defendant a right so to declare it. Mr. Justice Martin, in answering this objection, said: “When vested rights are spoken of by the courts as being guarded against legislative interference, they mean those rights to which a party may adhere, and upon which he may insist without violating any principles of sound morality. In the language of Judge Duncan, in Satterlee v. Matthewson, 16 Serg. & Rawle 191, there can be no vested right to do wrong. In the nature of things there can be no vested right to violate a moral duty, or to resist the performance of a moral obligation.” See also Nelson v. Hardesty, 1 Mary. Ch. R. 56.
The Connecticut decisions proceed upon the same ground. In Goshen v. Stonington, 4 Conn. R. 209, Hosmer, C. J. in commenting upon a statute prohibiting *the defense of usury as against antecedent contracts, said: “It was no violation of the constitution; it was not a novelty, such exercises of power having been frequent, and the subject of universal acquiescence; and no injustice can arise from having given legal efficacy to voluntary engagements, and from accompanying them with the consequences they always import.
These questions, and others of a like character, have been perhaps more carefully considered and oftener decided by the courts of Pennsylvania than in any other state. In a long train of decisions pronounced by the ablest jurists of that state, legislation of this kind has been fully sustained as in entire conformity with both federal and state constitutions. I refer particularly to the cases of Hess v. Werts, 4 Serg. & Rawle 356; Satterlee v. Matthewson, 16 Serg. & Rawle 169; Bleakney et als. v. Farmers & Mec. Bank of Greencastle, 17 Serg. & Rawle 64.
To these cases may be added decisions of the Supreme courts of New Jersey, Michigan and Iowa. These decisions do not involve the precise points arising in the present case; but the principles they announce' apply to the statute in question, and fully sustain its contstiutionality. State v. City of Newark, 3 Dutcher’s R. 186; Gibson v. Hibbard, 13 Michigan R. 215; Harris v. Rutledge, 19 Iowa R. 389; State v. Squires, 26 Id. 340.
It thus appears that the constitutionality of this legislation, or legislation of a like character, has been affirmed by learned judges and commentators, by the Supreme *274 courts of ten states, and the declared will of ten legislatures, besides that of Virginia. Against this formidable array of authorities what have we? The learned counsel . , . for the defendant has *cited a number of cases supposed to give countenance ■ to his position; but it will be found upon a careful examination that very few of them have any direct bearing upon the point in controversy here. The New York decisions referred to, relate principally to statutes affecting the vested rights of husbands in the estates of their wives. They do not in the least conflict with the doctrines laid down in Curtis v. Leavitt.
The cases in the Supreme court of the United States do not touch the point under consideration. The only province of that court is to enquire whether the statute is in conformity with the constitution of the United States. If it is, that court will not pronounce against its validity, because it is repugnant to the constitution of the state.
The cases from Massachusetts and Mississippi upon which so much reliance is placed, were decided upon statutes which attempted to revive certain causes of action already barred by limitation. Legislation of this kind has been generally considered an unconstitutional interference with vested rights. The reason is apparent and is well understood. The statutes of limitation are essentially statutes of repose; they are founded upon the idea that the party affected has had full opportunity to try his right; that he has lost it by his own conduct, and he has thus vested in his adversary a right of property as complete and perfect as if bestowed by grant. It has been very justly observed, that after the bar is complete, parties are justified in forbearing to take and preserve evidence, and to retain proofs and vouchers, as they otherwise would; and they feel and act upon the conviction that the cause of action is at an end. “The act of limitations is therefore a law of presumptions : it presumes evidence from length of time which cannot now be produced; payments *which cannot now be proved; releases which cannot now be shown.” Barton lessee v. Shall, Peck R. 215; Wright v. Oakley, 5 Metc. R. 410.
These considerations are sufficient to show that the principles which apply to rights vested by reason of the operation of the statutory limitation have no just application to laws giving effect to the contract of parties affected by the taint of usury. We are told, however, that the laws in force when and where the contract is made enter into and constitute a part of it, and consequently the legislature is not authorized so to change or modify those laws as to affect rights vested under them. This is a very just principle in some cases. But it does not admit of universal application. No one seriously maintains that the statutes of limitation in force when a contract is made, or the laws authorizing imprisonment for ■ debt or distress for rent, constitute a part of the contract. And yet they confer important rights, and it is fairly to be presumed, in many cases, parties contract with reference to them. They are, however, often changed and even abolished at the pleasure of the legislature, without a question of the constitutional power to affect existing causes of action.
The cases decided by the Supreme court of the United States to which reference has been made, only affirm the doctrine that the laws in existence when a contract is made so far enter into and become a part of it that they cannot be changed or abolished to the extent of depriving a party of all remedy to enforce the contract. This is a well established principle, universally recognized by the courts. It proceeds upon the obvious ground that to take away the remedy entirely is, in effect, to impair the obligation of the contract. To impair the obligation of a contract is *one thing; to afford a remedy for enforcing it, where none previously existed, is another and very different thing. In Sedg-wick’s Treatise on Constitutional Law, page 406, it is laid down that the legislature is competent to give a statute a retrospective operation unless it violates that provision of the federal constitution relating to ex post facto laws and the obligation of contracts, or unless it is repugnant to some express provision of the state constitution, or unless it interferes with vested rights of property, so as not to come within the proper limits of the law-making power. Independently of these exceptions, retrospective laws are within the scope of the legislative authority, and the judiciary will not interfere with them. Now, it is very clear that statutes taking away the defense of usury as against antecedent contracts are not included in either of the exceptions mentioned. As has already been seen, they do not infringe upon the federal constitution, they certainly do not violate any express provision of the state constitution, and it is equally clear they do not interfere with any vested right of property.
The usury laws are founded upon considerations of public policy. They are modified from time to time, and even abolished, as the popular sentiment may dictate, or the public interest require. In Virginia, these laws have undergone frequent changes in the last few years. In other states, parties are left free to regulate the subject at their discretion, with,a statute fixing the rate of interest in the absence of any express agreement. If no laws upon the subject existed, no one questions that any rate agreed upon by the parties would be lawful and enforced by the courts. The statutes upon this subject are regarded as purely remedial, and subject *to the modification and control of the legis- ■ lative department, even as applied to past transactions. This is the view of the courts and legislatures, not only in modern times, but seems also to have prevailed in the earlier history of the state. By the act of 1734, usurious contracts made to the 1st *275 of November, 1734, were legalized to the point of principal and lawful extent. We have no means of ascertaining whether the constitutionality of this statute was ever called in question. The presumption is that it was not, as the legislature fourteen years after, in 1748, re-enacted identically the same provision.
Now it is very clear that the contract being an entire thing, the promise of the debtor to pay the principal and lawful interest cannot be separated from the promise to pay the usurious premium. In either case the promise is utterly void. If, therefore, the legislature may legalize the contract as to the principal and lawful interest, it may legalize it as to the excess. If it may take away the defense of usury as to part, it may do so as to the entire contract. Courts of equity effect substantially the same results contemplated by these early statutes, in requiring the payment of the principal and lawful interest as a condition of relief; and this too in direct opposition to the statute forfeiting the entire debt. Indeed the charge is sometimes made that the equity courts repeal the statutes prohibiting usury. May not the law-making power apply the same rule to the common law courts; may it not clothe these courts with like jurisdiction and authority to administer relief in the mode exercised by the equity courts? If indeed it may prescribe that the defense of usury shall be taken away as to *'the principal and lawful interest, it may declare that the defense shall not be made at all.
Under one section of the statute prohibiting usury, if the borrower exhibits his bill and calls for discovery, he is relieved upon the payment of the principal without interest. If he does not seek a discovery, but asks for an injunction to prevent a sale of property, and is full-handed with proof, he is released from the payment of both principal and interest. There can be no question, I imagine, but that this relief may be varied at the pleasure of the legislature, and that it may be applied alike to antecedent and to subsequent transactions. The statutes against usury are regarded in Virginia as highly penal in their character. In Brockenbrough’s ex’ors v. Spindle’s adm’ors, 17 Gratt. 21, 32, the president of this court said: ‘ ‘However small the amount of usurious interest contracted for, and however large the amount of money loaned, the contract is declared void, and the lender forfeits the whole amount of the debt and. interest. ’ ’
In Crenshaw’s adm'or v. Clark, 5 Leigh 65, 72, Judge Carr speaks of the loss of the debt as a severe penalty, not to be inflicted without clear and strong proof. And in the same case Judge Tucker said: ‘ ‘The defense goes not merely to absolve the debtor from usurious gain, but to vacate the contract and to annihilate the debt, to take from the usurer his just principal and interest, and put it in the coffers of the debtor to whom it does not fairly belong. ’ ’
These citations sufficiently show the light in which the defense of usury has been regarded in Virginia, and that the loss of the debt under that defense is treated as a forfeiture imposed by the stern mandates of the statute.
*There may be cases, but I have not seen them — certainly no well considered case — in which it has been held that a party can have a vested right to a forfeiture, contrary to the express terms of the contract, even where the forfeiture results from a violation of an agreement. Courts of equity often relieve against it upon the application of the debtor. This is a favorite branch of equitable jurisdiction. It is founded upon the idea that although the legal right to the forfeiture is complete, the creditor shall not be permitted to avail himself of it for the purposes of injustice and oppression. This is certainly an interference with vested rights; but they are not of such a character as are deemed secure against legislative or judicial action. In the language of the Supreme Court of New Jersey, “Courts do not regard rights as vested contrary to the justice and equity of the case.”
In the case of Foster and others v. Essex Bank, 16 Mass. R. 245, it -was urged that a statute giving a right of action against certain debtors, which had been lost by the expiration of the bank charter, was retrospective and void. Parker, J., said: “The statute does not interfere with any of the privileges secured by the charter, unless it be considered a privilege to be secured from the payment of debts or the performance of contracts; and this is a kind of privilege which we imagine the constitution was not intended to secure. The truth is, there is no such thing as a vested right to do wrong. ’ ’
Unless we suppose it is the deliberate purpose of the debtor when he borrows the money never to return it, the only effect of the statute is to compel him to do what he intended and agreed to do at the time of entering into the contract. It is a legislative declaration that the forfeiture shall not be enforced. It leaves the *contract to be executed according to its terms and the original intention of the parties. It violates no vested right, unless it can be considered a vested right of the loaner to vacate his contract and annihilate his debt. Clearly this is not the kind of right the constitution was designed to protect.
This conclusion would not be varied in the slightest degree by the passage of the legislative act after the institution of the suit. It might be argued, with some degree of plausibility, that the plaintiff, having brought his suit, thereby acquires rights which cannot be affected by subsequent legislation; but it is difficult to perceive in what way an action against a party can confer upon him rights he did not possess independently of such action. If the right to rely upon the defense of usury is not in the nature of a vested constitutional right, secure against legislative invasion, the law *276 making power may certainly take away the privilege at any time before its actual exercise by the defendant.
Upon this point the authorities are abundant and generally uniform. I do not deem it necessary to do more than refer to a few of the most important. Butler v. Palmer, 1 Hill’s R. 324, 330; Stoever v. Immell, 1 Watts’ R. 258; Curtis v. Leavitt, 15 New York R. 1; Satterlee v. Matthewson, 16 Serg. & Rawle R. 169; Sedgwick on Con. Law 412.
.' It has been very strongly argued that this law involves the exercise of judicial functions by the legislature. This objection was suggested in some of the cases heretofore mentioned. In others it was not even alluded to. In none of them, does it seem to have received much attention, or to have been considered as entitled to much weight.
The case of Griffin’s ex’or v. Cunningham, 20 Gratt. *31, is, however, principally relied on in support of the objection. In that case a majority of this court held that an act of the legislature authorizing a review, after the term was ended, of the decrees and judgments rendered by the Court of Appeals, which sat here before the organization of the present government, was in the nature of a judicial act, and was therefore void. This decision was based upon the obvious ground, that a statute which vacates decrees and judgments, grants new trials, or authorizes rehearings, is essentially judicial in its character. Such an act is the very essence of judicial power, and an invasion of the judicial department.
This simple statement demonstrates that the reasoning advanced, and the doctrines asserted in Griffin v. Cunningham, have no application to the subject under consideration. It is proper to add, that two of the judges, Moncure and Anderson, did not concur with the majority in that case. They were of opinion that the statute was in every view constitutional and valid.
All will concede that the line which separates judicial from legislative functions, is, in many cases, shadowy and indistinct, so that it is often a matter of real difficulty to determine within which of the two classes a particular subject falls.
Statutes affecting limitation of actions, statutes relating to frauds and perjuries, to the admission of parol and written evidence, statutes relating to the registration of deeds, legalizing judicial proceedings, validating defective marriages, and a multitude of others, apply to the transactions and agreements of parties rules of decision wholly different from that which prevailed when the transactions occurred or the agreement was made. And yet these statutes have *been fully sustained as clearly within the constitutional competency of the law-making department.
. The courts of Pennsylvania decided that the relation of landlord and tenant could not exist in that state under a Connecticut title. The legislature of that state then passed an act which provided that such relation shall exist and be effectual on the trial of cases then pending or thereafter instituted. This act was fully sustained by both state and federal courts, and was actually applied to suits or a suit brought before its enactment. Judge Cooley expresses the opinion, that as the purpose and intent of the act was to remove from contracts which parties had made, a legal impediment to their enforcement, there would seem to be no doubt, in the light of the authorities, that the conclusion reached was the only just and proper one. Satterlee v. Matthewson, 16 Serg. & Rawle 169.
That case goes much farther than is necessary for the purposes of this. There the statute was intended to apply only to a few cases; here it is general in its character— applicable to all the contracts of corporations made before or after the date of the act. A law which prescribes a general rule for the adjudication of all contracts of a certain character, may, in its retrospective feature, affect vested rights; but clearly it does not involve the exercise of judicial functions.
It only remains to consider, very briefly, one other objection urged by the learned counsel for the defendant. It is said that the law does gross injustice to the defendant. I must confess it does not so appear to me. None of those considerations which prompt the legislature to interpose for the security of the needy debtor against the ex-actions of the usurer apply to corporations. As a general rule, they sell their bonds *in the public market, for the best price such securities will command. In such case there is no demand for an usurious premium, and no intention to commit usury; but a fair contract of purchase and sale upon terms believed by both parties to be just and legal. Such securities are often sought for as safe, judicious and permanent investments, under the sanction of the courts. In this way the resources and means of the corporate authorities are increased, the burdens of excessive taxation avoided, and the health, the comfort and prosperity of the inhabitants of towns and cities promoted and extended by the establishment of useful institutions, valuable works of public improvement and the blessings of good government. These considerations are sufficient to show that the defense of usury by corporate bodies is not in accordance with the dictates of justice or an enlightened public policy. The legislature might, therefore, well provide that no such defense should be interposed in any action ^against them. The constitutional power being conceded, there is no valid reason why the prohibition should not extend alike to antecedent and subsequent contracts. But if I am mistaken in this view, it is very clear that the injustice or impolicy of a law is not a matter for judicial consideration. In no case can the sanctity, the honesty and the wisdom of the legislature become questions of judicial cognizance. We must take the law as we find it. We must treat it as having been deliberately *277 considered by the legislature; all its provisions, as it respects their constitutionality and expediency, thoroughly examined and understood, and finally receiving the enlightened approval of the executive. Thus regarding it, we can ^arrest the execution of the law only upon a clear conviction that the legislature has transcended its constitutional limits in the enactment. Entertaining no such conviction in this case, we are constrained to affirm the judgment of the Circuit court.
The other judges concurred in the opinion of Staples, J.
Judgment affirmed.
MUNICIPAL CORPORATIONS.
I. Definition and Creation.
II. Rights and Powers.
A. In General.
B. Acquisition of Property.
1. Dedication.
2. Condemnation.
C. Rights of Municipality in Streets.
1. In General.
2. Opening. Grading and Improving.
D. Power of Borrowing Money.
1. In General.
2. Municipal Bonds.
E. Power of Taxation.
1. In General.
2. Local Assessments.
III. Duties and Liabilities.
A. In General.
B. Relating to the Condition of Streets and Sidewalks.
C. In Connection with the Improvement of Streets and Sidewalks.
IV. Charters and Ordinances.
A. Charters.
B. Ordinances.
V. Officers and Governing Bodies.
VI. Pleading and Practice.
A. Statute of Limitations as against Municipalities.
B. Miscellaneous Matters of Procedure.
VII. Special References.
A. Municipal Corporation Cases. Annotated.
B. Virginia Law Register.
C. Lite’s Notes on Municipal Corporations.
I. DEFINITION AND CREATION.
A municipal corporation, in its strict and proper sense, is the body politic and corporate constituted by the incorporation of the inhabitants of a city or town for the purposes of local government thereof. 1 Dillon’s Municipal Corp. (4th Ed.) § 19.
In Virginia and West Virginia, municipal corporations are created and organized only under special legislative enactments, which constitute their charters. 15 Am. & Eng. Enc. Law 959.
In Brown v. Gates, Treasurer, etc., 15 W. Va. 131, it was held that the city government, is not the corporation.
‘‘City”- — Construction of Statutes. — In Roche v. Jones, 87 Va. 484, 12 S. E. Rep. 965, section 1016, Va. Code 1887. is held not to apply to a town having less than 5,000 inhabitants, and no corporation court, notwithstanding Code, § 5, ch. 16, provides that the word “city” shall be construed to mean a town of 5,000 population and a corporation court.
II. RIGHTS AND POWERS.
A. In General. — A municipal corporation has only such powers as are conferred upon it, by the legislature. in its charter; or more specifically, as said by the court in Duncan v. City of Lynchburg, 98 Va. —, 34 S. E. Rep. 964: “It is the settled law of this state that a municipal corporation possesses and can exercise the following powers, and none others: first, those granted in express words: second, those necessarily or fairly implied, or incident to the powers expressly granted: third, those essential to the declared objects and purposes of the corporation,- — not simply convenient, but indispensable.” See also, Lynchburg, etc., Co. v. Dameron, 95 Va. 545, 28 S. E. Rep. 951; Wallace v. Richmond, 94 Va. 204, 26 S. E. Rep. 586; Winchester v. Redmond, 93 Va. 711, 25 S. E. Rep. 1001; Whiting v. West Point, 88 Va. 905, 14 S. E. Rep. 698; Roper v. McWhorter, 77 Va. 214; Danville v. Shelton, 76 Va. 325; Charleston v. Reed, 27 W. Va. 681; Peters v. City of Lynchburg, 76 Va. 927; Kirkham v. Russell, 76 Va. 956.
As said by the court in Ould v. City of Richmond, 23 Gratt. 467: “The powers of public corporations are either express, implied, or incidental. And except as to such powers as are incidental, the charter itself, or the general law under which they exist, is the measure of the authority to be exercised. They have no inherent jurisdiction, like the state, to .make laws, or adopt regulations of government. They are governments of enumerated powers, acting by a delegated authority; so that while the state legislature may exercise such powers of government, within the description of legislative power* as are not expressly or impliedly prohibited, the local authorities can exercise those only which are expressly or impliedly conferred, and such as are incidental, subject to such regulations and restrictions as are annexed to the grant.”
The exercise of chartered functions in a mode different from that prescribed is a want of power on the subject. Page v. Belvin, 88 Va. 985, 14 S. E. Rep. 843.
Contracts — Limited Powers — Acts Ultra Vires. — All persons contracting with a municipal corporation must, at their peril, inquire into the power of the corporation or its officers to make the contract. A contract beyond the scope of the corporate powers is void. City of Winchester v. Redmond, 93 Va. 711, 25 S. E. Rep. 1001.
Grant of Franchise to Street=Car Company — Validity —Constitutional Law. — Under the general statute law of West Virginia governing cities and towns, a grant by a municipal corporation of the privilege, not exclusive, of occupying its streets for the conveyance of electricity for public use therein, confers a valid franchise, and is a contract protected by the provisions in state and federal constitutions prohibiting the passage of any law impairing the obligations of contracts. (The question of the reasonableness of the term of such grant not considered.) Clarksburg Electric Light Co. v. City of Clarksburg et al. (W. Va.), 35 S. E. Rep. 994.
Grant of Exclusive Franchise — Validity.—The council of the town of Clarksburg in 1887 had no power, either under its charter or under the general statute law governing towns and cities, to grant an exclusive franchise for 20 years to a private corpo *278 ration to use its streets for the conveyance of electricity for public use in the city. Such exclusive grant does not prevent the town from granting to another corporation, within said term, the privilege to occupy its streetsif or the same purpose. Such exclusive grant, being void, is not a valid contract protected by the provisions in the federal or state constitutions forbidding the passage of any law impairing the obligations of contracts. Clarksburg Electric Light Co. v. City of Clarksburg et al. (W. Va.), 35 S. E. Rep. 994.
The grant by a city to a gas company of the exclusive privilege of lighting the city with gas does not deprive the city of the power to contract with an electric-light company for lighting the city with electric lights. Parkersburg Gas Co. v. City of Parkersburg et at., 30 W. Va. 435, 4 S. E. Rep. 650.
Qrant of Franchise to Unorganized Corporation— Validity. — The grant by a city or town to an intended corporation of a franchise to use its streets for the conveyance of electricity for public use in the town or city is valid, though at its date the corporation is not chartered, but is later chartered, and accepts the grant. Clarksburg Electric Light Co. v. City of Clarksburg et al. (W. Va.), 35 S. E. Rep. 994.
Power to Become Surety, Guarantor or Endorser.— The power conferred on a city to acquire suitable works and machinery for the generation of electricity for the use of the city and its inhabitants, and to do all things necessary or proper to carry into effect the powers conferred does not authorize the city to guarantee the bonds of another corporation, in which it has no interest, to enable it to furnish eléctric lights to the city and its inhabitants. Lynchburg & Rivermont Street Railway Co. v. Dameron, 95 Va. 545, 28 S. E. Rep. 951.
Power to Abate Nuisances, — The general powers of a municipal corporation to abate nuisances cannot authorize the extra-judicial condemnation and destruction of that as a nuisance which is not such. A municipal corporation has no authority to destroy a building which is private property, and a nuisance only because of the uses to which it is devoted. Bristol Door & Lumber Co. v. City of Bristol (Va.), 2 Mun. Corp. Gas. 548, and note.
Any unauthorized obstruction of such highway, is an indictable nuisance. And when a municipality has control of its streets, it may proceed in its corporate name to prevent or remove obstructions therein by judicial proceedings. Yates v. Town of Warrenton, 84 Va. 337, 4 S. E. Rep. 818.
A merry-go-round, run by a steam engine, the whistle of which blew every few minutes, accompanied by a band, and attended by a large, noisy, and boisterous crowd till after 10 at night, disturbing some of the people living near by it, is such a nuisance as a town council has power to abate, after proper investigation, under Code, c. 47, § 28. Town of Davis v. Davis, 40 W. Va. 464, 21 S. E. Rep. 906.
Change of Boundary — Statute.—The duty of a town council under section 48, c. 47, Code 1891, to submit the question of a change of boundary to a vote, is mandatory, not ministerial or discretionary, if such petitions as it prescribes are presented. Shank v. Town of Ravenswood, 43 W. Va. 242, 27 S. E. Rep. 223.
In Wade v. Richmond, 18 Gratt. 583, it was held that a statute'changing the boundaries of a municipality is not unconstitutional, and the legislature having the authority to extend the boundaries of a city, the justice of expediency of it is not a question of which the courts can take jurisdiction. See also, Board of Education v. Board of Education, 30 W. Va. 424, 4 S. E. Rep. 640.
Rewards for Apprehending Criminals. — The city of Winchester has no power, either under its charter or the general laws of the state, to offer a reward for the detection, apprehension, or conviction of offenders against the criminal laws of the state. The provision of section 9 of the charter authorizing the council “to do all such things as it may deem proper for the prosperity, quiet, and good order of the city" is to be confined, in its exercise, to the ordinary objects and purposes of municipal corporations, and not extended to matters which are common to the state, and affect its people at large. Municipal corporations are not created to execute the criminal laws of the state, but to regulate and administer the local and internal concerns of the people of the particular locality. City of Winchester v. Redmond, 93 Va. 711, 25 S. E. Rep. 1001.
Rights as Proprietor of Water Lots. — The city of Norfolk is the owner of the ground which she has not disposed of, covered by water, lying between Parker street and the portwarden’s line, both as riparian proprietor and as having had long possession thereof; and the city may maintain an action of unlawful entry and detainer, against any intruder upon said water lots. Norfolk City v. Cooke, 27 Gratt. 430.
Grant of Land to Municipality — Conditions in Deed.— In Bolling v. Mayor, etc., of Petersburg, 8 Leigh 224, a person granted land to a town corporation, having power to purchase and hold land “for the use of the town, for the purposes after mentioned in the deed.” The deed recited that the grant was in consideration of the courthouse and jail having been built thereupon, and also in consideration that such buildings, and the judiciary proceedings of the town should be continued and held on the premises, with covenant of quiet enjoyment, so long as the judiciary proceedings should be held thereon, with a proviso, that if they should ever be discontinued, the land shall revest in the grantor. The courthouse and jail and the judiciary proceedings were continued, maintained, and had on the land, but the town erected other buildings on the land also, which were rented to individuals. Held, that such use of the land was competent to the town, and that the grantor had no right to interfere.
Establishment of Hospital — Retrospective Legislation. — In Richmond v. Henrico Co., 83 Va. 204, 2 S. E. Rep. 26, the city of Richmond purchased land outside of its corporate limits, and in an adjoining county, to use as the site of a small-pox hospital, in lawful pursuance of a general statute authorizing the establishment of hospitals. Before the city could use the property for which it was purchased, and a few days afterwards, the legislature enacted an amendment to the law providing that cities locating hospitals outside of their corporate limits must first obtain the consent of the county court and board of supervisors. Held, that the purchase of the land by the city was such an establishment of the hospital on the site in question; that the city can use the property for such purpose without hinderance, notwithstanding the enactment of the amendment.
Delegation of Powers. — Under the provision of the charter authorizing the council to prescribe the width of the sidewalks, such power cannot be delegated to the street committee and city engineer. McCrowell v. City of Bristol et al., 89 Va. 652, 16 S. E. Rep. 867.
*279 In Green v. Ward, 82 Va. 324, it was held that by its charter the city council of Alexandria is empowered to have work, for which an assessment is made, done under the direction of a body known as the hoard of public works, created by the city council.
B. Acquisition of Property.
i. Dedication.
Definition — How Made— Collusiveness of. — Dedication is an appropriation of land by its owner for the use of the public. It is not within the statute of fraud and need not be by deed or other writing1, but may be effectually done by verbal declaration. It may also be either express or implied, and will be implied from long- use by the public of the land claimed to be dedicated. The intent is the vital principle, and dedication may be made in every conceivable way that such intention may be manifested. When such intention has been unequivocally manifested, and there has been an acceptance by competent authority, or such long1 use by the public as to render its reclamation unjust and improper, the dedication is complete: and when complete it is irrevocable. Buntin v. City of Danville, 93 Va. 200, 24 S. E. Rep. 830.
Acceptance — Revocation of Dedication. — Although there may have been a sufficient dedication of land to a public road or street, acceptance in some form by the public is necessary to establish the right in the public. The dedication, however, whether express or implied, maybe revoked before it has been accepted by competent authority, or others have, upon the faith of it, been induced so to act as to render its revocation unjust. City of Norfolk v. Nottingham, 96 Va. 34, 30 S. E. Rep. 444.
Acceptance by Public. — In Taylor v. Com., 29 Gratt. 780, it is held that to constitute a valid dedication of a street the intention of the owner to dedicate the property must be perfected by acceptance, express or implied, on the part of the public through its authorized officials. Where such acceptance is established no length of user is essential to a valid dedication. See also, Yates v. Town of Warrenton, 84 Va. 337, 4 S. E. Rep. 818, 10 Am. St. Rep. 860; Skeen v. Lynch, 1 Rob. 186.
Manner of Acceptance. — Until there has been an express or implied acceptance, the original owner may of course revoke his offer and reclaim the property. But a binding acceptance may be shown in many ways, and, unlike an acceptance of country highways does not have to be evidenced by record. If the offer to dedicate has been so acted upon as to virtually amount to an acceptance, it will operate as an estoppel to denying the dedication. Norfolk v. Nottingham, 96 Va. 34, 30 S. E. Rep. 444; Buntin v. City of Danville, 93 Va. 200, 24 S. E. Rep. 830; Richmond v. Stokes, 31 Gratt. 713.
Partial Dedication. — In Talbott v. R. & D. R. Co., 31 Gratt. 685, it was held that the grantor of a private right of way may limit'Its use to particular persons, but that there cannot be such a partial dedication to the general public.
What Title Passes by Dedication. — The dedication of a street only vests in the commonwealth a right of passage; the freehold and the proilts (such as trees upon it and mines under it), belong to the owner of the soil, who has a right to all remedies for the freehold, subject, however, to the easement. Bolling v. The Mayor, etc., of Petersburg, 3 Rand. 563.
As said by the court in Warwick v. Mayo, 15 Gratt. 545: “The dedication or laying out of a street within a corporation does not affect the ownership of the soil, and however enlarged the easement may be, when within the limits of a corporation, in order to the beneficial use of it, and to effect the purposes intended when the easement was created; subject to such use, whether enlarged or limited, the title remains in the owner. Notwithstanding the easement, the owner retains many and valuable interests.”
General Requisites of Valid Dedication. — No particular form of ceremony is necessary to dedicate land to public uses; the assent of the owner, and the fact of the land being used for public purposes, are all that is requisite. In 1789. with the consent and approval of the owner, the body of Mary Washington was interred in a burial lot, and forty-two years later a monument was erected over her grave by an association organized for that purpose. The corner-stone was laid with civic and military ceremonies by the president of the United States. Since then no one has claimed any private ownership over this spot of ground. Held, this constituted a complete dedication of the tomb to public uses. Colbert v. Shepherd, 89 Va. 401, 16 S. E. Rep. 246. For an exhaustive treatment of the law of dedication see note appended to City of Seattle v. Hill et al., 5 Mun. Corp. Cas. 191.
Dedication — Burden of Proof.— Where a town proceeds to open an alley through a man's land without his consent, and without having first condemned the same for public use, according to law, upon the ground that the land proposed to be taken for that purpose has been dedicated to the public by the owner thereof, the burden of proof that such dedication has been made is upon the town. Where such town claims that such alley has been, by the acts and declarations of the land owner, dedicated to the public for that purpose, such acts and declarations must be deliberate, unequivocal, and decisive, manifesting a positive and unmistakable intention to permanently abandon his property for that specific public use. Miller v. Town of Aracoma, 30 W. Va. 606, 5 S. E. Rep. 148.
2. Condemnation. — Where a statute has defined what interest or estate may be taken under condemnation proceedings, no less interest or estate than that specified can be taken. Accordingly, under a power to condemn the fee in lands, the right of a municipal corporation to condemn merely the use of water flowing through the land cannot be exercised. The right of eminent domain must be exercised in the manner and upon the terms and conditions prescribed by the act conferring the power; and though that power be conferred by the charter of a municipal corporation it is still to be exercised in accordance with the general law on the subj ect, unless a contrary in tent clearly appears, or is necessarily implied in the special legislation. Statutes which encroach on the personal or property rights of the individual are strictly construed. City of Charlottesville v. Maury, 96 Va. 383, 4 Va. Law Reg. 499, 31 S. E. Rep. 520.
Condemnation of Fee Simple, — A statute requiring the condemnation of the fee simple is not repugnant to the constitution. And if it was, the municipality cannot be heard to deny the validity of the statute under which it has chosen to proceed. Roanoke City v. Berkowitz, 80 Va. 616.
C. Rights of rUinicipalityin Streets.
i. In General. — in Charlottesville v. Southern Ry. Co., 97 Va. 431, 34 S. E. Rep. 98, it was held that a street in a city, though under the control of the city, is the *280 property of tie state, Reid in trust for tie 'benefit of the public.
Police Power — Prohibition of Steam Railway on Streets — The charter of the Richmond, Fredericks-burg- and Potomac Railway Company does not in express terms, or by necessary implication; vest in the company the right to propel her engines by steam through the streets of a city without the consent of the corporate authorities of the city; and the charter of the city of Richmond giving to the council of the city the authority to prevent the propelling of the cars of a railroad company by steam through the streets of the city, provided no contract is thereby violated, the counsel may prohibit said railroad company from the use of steam in propelling their cars in the streets of the city. A corporation, except where it is otherwise provided in its charter, expressly or by clear implication, in the use of its property, the exercise of its powers and the transaction of its business, stands upon the same footing as individuals, and is subject to the same control under the police powers of the state or a municipal corporation. Richmond, etc., R. Co. v. Richmond, 26 Gratt. 83.
Power to Allow Railroad on Street. — "Where a county road has been included within the limits of an incorporated town, and the municipal authorities of said town have assumed control of such road, they may, under the general powers conferred by statute with reference to streets, alleys, etc., authorize a railroad company to use a portion of said road for the purpose of constructingits railway along the same, in accordance with the statute which provides for such construction. Yates v. Town of West Grafton, 34 W. Va. 783, 12 S. E. Rep. 1075.
Cattle Running at Large — Power of Preventing — Impounding.— Code, c. 47, § 28, provides that the council of a city shall have power to prevent cattle from going at large in the city, and section 29- declares that to carry into effect the powers conferred on a city the council shall have the power to pass all needful ordinances not contrary to the constitution and laws of the state, and to prescribe reasonable fines and penalties. Held, that the council could provide for the taking up and impounding of cattle found running at large in the public streets, and for selling them to pay charges. Burdett v. Allen, 35 W. Va. 347, 13 S. E. 1012.
Sale of Lots by a Map — Rights of Purchasers in Streets — Rights of Third Persons. — The sale of lots according to a map vests in the purchasers the right to use the streets appearing on such map, and the right so vested cannot be defeated by the act of the vendor, because by the sale under such circumstances, he is estopped to denjr or impeach rights thus acquired. Such an estoppel, however, operates only in favor of him who has been misled to his injury, and he alone can set it up. It does not operate in favor of a city or county which has acquired no rights thereunder. City of Norfolk v. Nottingham, 96 Va. 34, 30 S. E. Rep. 444.
Firing Pistol in Street. — The wilful firing of a pistol in the streets of a city, whether done maliciously or not, is of itself an unlawful act, and the consequences must be visited on those who commit it, or instigate it. Daingerfield v. Thompson, 33 Gratt. 137.
2. Opening, Grading and Improving.
Appropriation of Private Property.
Virginia Rule — “Taking.”—A municipal corporation, acting within the scope of its powers with reasonable care and skill, in opening, grading and improving its streets, is not liable to the adjacent owner whose land is not actually taken, for consequential damages to his premises, unless there is a provision in its charter, or in some statute, creating the liability. It is damnum absque injuria. Kehrer v. Richmond City, 81 Va. 745; Smith v. Alexandria, 33 Gratt. 208; Powell v. Wytheville, 95 Va. 73, 27 S. E. Rep. 805, notes; 2 Mun. Corp. Cas. 556 et seq., notes; 1 Mun. Corp. Cas. 73 et seq.
What Constitutes a “Taking.” — in the case of Stearns v. City of Richmond, 88 Va. 992, 14 S. E. Rep. 847, the decision is anomalous, and directly in conflict with all the other Virginia cases on the subject both before and since. The facts were that, in changing the grade of a street, a city excavated to the depth of sixty feet, causing plaintiff’s abutting land to cave in to such an extent as to destroy the walls of brick buildings thereon twenty feet from the street line. The fallen earth was used in a neighboring pit. This was held to be a taking of plaintiff’s property and resulting damages were direct and not consequential.
West Virginia Rule — Taking and Damaging. — The doctrine in West Virginia, in respect to the right of a city to appropriate private property for public use, differs from that in Virginia for the following reason: In the former state the constitutional prohibition is against not only the “taking,” but also the “damaging,” of private property, while in Virginia the constitution only prohibits the taking. Accordingly it is held in West Virginia that a city is liable for merely damaging private property. In Blair v. City of Charleston, 43 W. Va. 62, 26 S. E. Rep. 341, the syllabus by the court was as follows: (1) If a street be opened and used upon the natural surface as a grade line, and it is recognized and treated by a city or town as a public street, and owners of lots upon it build with reference to such natural grade line, and it is changed, the city or town is liable to lot owners for damages consequential upon the change of grade, though no grade for the street was ever adopted by the municipality, under section 9, art. 3, of the constitution. Such natural grade thus became the established grade. (2) Though such owner purchase after the municipality has established a paper grade line, but before actual physical grading conforming a street to that line, that will not preclude his recovery for damage to his lot; but he cannotrecover for damages to buildings erected after the adoption of such paper grade. He must conform to such grade line. (3) The measure of damages for injury to property from change of a street grade line is that sum which will make the owner whole; that is, the diminution of the market value from the change. If the market value is as much immediately after as immediately before the change, no damages can be recovered. (4) In estimating damages to property from change of grade in a street, all damage and injury arising from the change causing a diminution in the value of the property are to be regarded, abating all special benefits to the property enhancing its value arising from the change of grade, but not general benefits shared by the property owner in common with others in the community at large. The question is one of damage, less special, but not less general, benefit. (5) What are special benefits? If property is enhanced in value by reason of a public improvement, as distinguished from the general benefits to the whole community at large, it is specially benefited, and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement may, to greater *281 or less extent, "be likewise specially ‘benefited. In other words, it is not only such benefits as are special, or limited to the particular property, thereby excluding- the consideration of such benefits as are com tn oii to other property similarly situated, but it is such benefits as that the particular property is by the improvement enhanced in value — that is, specially benefited — that are to be considered. If a piece of property is enhanced in value, its enhancement, or, in other words, benefits to the property, cannot be said to be common to any other piece of property specially enhanced in value, and it is thus specially benefited within itself, and irrespective of the benefit that may be conferred by the improvement upon other properties. (6) Opinions of witnesses as to the value of property before and after a change in a street’s grade are admissible as evidence in actions against municipal corporations for damage flowing from such change. See also, Johnson v. City of Parkersburg, 16 W. Va. 402.
Laying Out Streets — Keeping Streets in Order. — The right to lay out streets and to regulate their use when laid out, and to suspend such regulations at pleasure, are governmental and discretionary powers, but when laid out, the duty to keep them in a reasonably safe condition for travel is a ministerial and positive duty. For their safe condition the municipality is liable, but for their unlawful or improper use it is not. Jones v. City of Williamsburg, 97 Va. 722, 34 S. E. Rep. 883, 3 Mun. Corp. Cas. 444, and note.
Laying of Pipes — Right to Dig up Street. — The right to dig up streets for the purpose of laying water or gas-pipes is a franchise which can only be granted by the legislature or by the city under legislative authority. The legislature, in 1850, chartered a company to open streets, etc., in a city, to lay water-pipes, provided they be, as soon as practicable, repaired by the company at its own expense, subject to the approval of the superintendent of police or the council. That council, in 1889, ordained that no person should open the streets, etc., without previous permission from the mayor, and depositing with the city treasurer such a sum as the committee on streets should deem sufficient to repair the street, under a penalty. Wheat v. City Council of Alexandria, 88 Va. 742, 14 S. E. Rep. 672.
Privilege to Lay Pipes — Removal.—Where for value received, a city allowed a company to lay gas or water-pipes in its streets, the company is held to have accepted the privilege subject to the city’s right to change the grade of its streets, and with the probability that the right would be exercised. The city may afterwards lower the grade, and if in so doing the pipes become exposed and obstructive, it may require the company to remove them or have it done by its own agents. If the company have any remedy for such removal of the pipes, it is at law for compensation. The municipal council, and not the court, is the judge of the expediency and necessity of exercising the power; and an injunction will not lie to prevent its exercise. Roanoke Gas Co. v. City of Roanoke, 88 Va. 810, 14 S. E. Rep. 665.
Improvement of Streets — Delegation of Power. — The power to grade and improve its streets granted toa city by its charter cannot be delegated or alienated. Roanoke Gas Co. v. City of Roanoke, 88 Va. 810, 14 S. E. Rep. 665.
D. Power of Borrowing Money.
i. In Genera!.
Power to Purchase Real Estate and Give Bonds Therefor. — A municipal corporation cannot borrow money and issue its bonds therefor unless the power to do so be conferred by legislative enactment expressly given, or clearly implied. But every municipal corporation has the power to purchase and hold all the real estate reasonably necessary to the proper exercise and enjoyment of the powers conferred upon it, or essential to the purposes for which it was created, and, as incident to this power, may purchase on credit and bind itself by the execution of a bond, note, or other non-negotiable security for deferred payments. Richmond, etc., Co. v. West Point, 94 Va. 668, 27 S. E. Rep. 460,
Limit of Indebtedness. — A city, indebted up to the limit fixed by the constitution, cannot carry on its operations upon credit, within the meaning of credit in the constitution, in any manner, or for any purpose, but must pay during the current year with funds in hand, or with funds already legally levied. A city thus indebted cannot increase its indebtedness beyond the constitutional limit by contracting for an electric apparatus and plant; and, such indebtedness being forbidden, the contract out of which it arises, although executory, is also forbidden. The end aimed at is prohibited, which carries with it the prohibition of the means directly and appropriately designed and adapted for its accomplishment. Any tax-paying resident and voter of such city, suing on behalf of himself and of all other taxpayers of such city, has a right to enjoin the creation of any such unconstitutional indebtedness. Spilman v. City of Parkersburg, 35 W. Va. 605, 14 S. E. Rep. 279.
Limit of Indebtedness — Pleading.—when an incorporated town has contracted for work to be done upon its streets, which work is done as provided in the contract, accepted by the town, and orders issued upon its treasury for the amount agreed to be paid therefor, such orders being presented and payment refused, and the holder of the orders sues out an alternative writ of mandamus, and defendant files his return and answer, offering no defense, except that, for the same year in which the contract was made and the work done, it had already, prior to the making of the contract, created a greater amount of indebtedness than the amount of the levy it was authorized to make upon the taxable property and persons and allother sources of revenue of the town to pay it, for such answer to be sufficient to defeat recovery it must show clearly that it had created such indebtedness to the full extent of its authority to levy before it made the contract with plaintiff, or, if its said prior indebtedness had not reached the full limit allowed bylaw, it should have shown that it had actually paid, on account of such contract for which said orders were issued, the amount the plaintiff could be entitled to receive out of such levy. Roe v. Town of Philippi, 45 W. Va. 785, 32 S. E. Rep. 224.
In exercising the power to borrow money, a municipal corporation is not exercising sovereign powers, but is responsible for the acts of its agents as a private corporation. DeVoss v. City of Richmond, 18 Gratt. 338, 98 Am. Dec. 647; Supervisors v. Randolph, 89 Va. 614, 16 S. E. Rep. 722; Bell v. Farmville, etc., R. Co., 91 Va. 99, 20 S. E. Rep. 942.
Authority of Municipality to Subscribe to Stock.— The legislature has power to authorize a county or other municipality to subscribe to the stock of a railroad company and to issue bonds for such subscription. Although, by reason of mistake, carelessness, or other cause, a county has failed to comply with the conditions precedent to the exercise of a *282 power conferred upon it by the legislature to isshe bonds, still the legislature can cure all irregularities by subsequent legislation, and mates such bonds as valid and binding as if all the conditions precedent had been strictly complied with. Bell v. Farmville, etc., R. Co., 91 Va. 99, 20 S. E. Rep. 942.
The commonwealth of Virginia having long desired to effect a complete line of transportation from the navigable waters of the Ohio to the city of Richmond, and having with this view constructed certain worts on portions of the route, subsequently incorporates a joint stock company to accomplish the obj ect, to which company the worts of the commonwealth are, by the terms of the act of incorporation, to be transferred at a specified valuation, and in which company the commonwealth herself becomes a large stockholder. The city of Richmond having been incorporated for municipal purposes, a majority of her citizens qualified to vote for members of the common council desire that the corporate authorities should subscribe for a large number of shares in this joint stock company, and the legislature, in accordance with their desire, pass laws authorizing the common council to make such subscription. By these laws, the common council is authorized to borrow money to effect the object, and to levy, assess and collect such taxes as in their opinion will be necessary for the purpose of paying the interest and redeeming the principal of any loan which may be effected. This authority to borrow money and levy taxes is carried into effect, by an ordinance; and under the ordinance the collector takes the property of a citizen, against whose will the laws authorizing the subscription was passed, who refuses to pay the taxes levied under authority of these laws, upon the ground that they are unconstitutional. Held, they are constitutional and valid. Goddin v. Crump, 8 Leigh 120.
2. Municipal Bonds.
Issuance of Bonds, — Power of municipal corporations to borrow money implies power to issue its bonds therefor. Bunch’s Ex’or v. Fluvanna County, 86 Va. 452, 10 S. E. Rep. 532.
Authority to Issue. — In an ordinance the authorization of bonds not to exceed $6,000 is equivalent, in legal effect, to fixing the amount of such bonds at such sum. In either case, the authorities would only have the right to issue bond's sufficient to cover the purpose for which the ordinance is adopted. Knight v. Town of West Union, 45 W. Va. 194, 32 S. E. Rep. 163, 1 Mun. Corp. Cas. 219, and note.
In a municipality having less than 600 voters, an election confined solely to the question of the issue of municipal bonds is not invalid because conducted in the mode prescribed for the election of municipal officers in the absence of political or party nominations. Mere informalities of the election officers in holding, and ascertaining and declaring the result of, an election, unless otherwise provided by statute, will not vitiate an election otherwise fair and impartial. Knight v. Town of West Union, 45 W. Va. 194, 32 S. E. Rep. 163, 1 Mun. Corp. Cas. 218, and note.
municipal Bonds — Purchasers for Value. — The bona fide purchaser for value of negotiable coupon bonds of a municipal corporation is in no sense bound to see to the application of the purchase money, nor to determine whether the proceeds were or were not to be used in the discharge of an ultra vires contract of the municipality. If the municipality had power to issue the bonds, and that power has been properly exercised, and the bonds are regular on their face, it is immaterial to what use the proceeds of the bonds are applied, so long as the purchaser had acted in good faith. Town of Clifton Forge v. The Alleghany Bank, 92 Va. 283, 23 S. E. Rep. 284.
Municipal Bonds — Conditions—Rights of Bona Fide Holder. — A municipal corporation having authority to provide for the poor and needy of the city in 1864, pass an ordinance for the issue of $50,000 of the coupon bonds of the city, and the ordinance provides that the proceeds shall be paid into the treasury of the city, subject to the order of the council, for the use and benefit of indigent families and citizens. Held-. A bona fide holder of these bonds is not required to look further than the ordinance to see whether the bonds were issued for a legitimate purpose; and his right to recovery upon the bonds will not be affected by the fact that the council may have applied the proceeds of the bonds to other purposes. City of Lynchburg v. Slaughter, 75 Va. 57.
Municipal Bonds — Validity — Rights of Bona Fide Holder. — Though coupon bonds may have been issued by a municipal corporation for the purpose of aiding the rebellion, this not appearing on the face of the bonds, or the ordinance authorizing their issue, the bonds in the hands of a bona Me holder for value without notice or knowledge of the purpose, are valid, and binding upon the corporation. And though the holder of the bonds had such notice, yet if the party from whom he purchased was a bona fide holder for value, without such notice, the bonds are valid and binding in the hands of the present holder. City of Lynchburg v. Slaughter, 75 Va. 57.
The district court of the Confederate States «confiscated certain bonds of the city of Richmond, and by its decree directed the city council to issue bonds in lieu of those so confiscated to its receiver. The council, by resolution, directed its officers to issue the bonds as directed by the decree; but to insert on the face of the bond so issued, and on the books of the office, that it was so issued in lieu of a confiscated bond, and to do this upon every re-issue of the bond. The officer obeyed the directions on the first issue of the bond, but failed to do it upon the re-issue of the bond, and it was purchased by a party having no knowledge that it was such a bond. The city is bound to pay the bond. DeVoss v. City of Richmond, 18 Gratt. 338, 98 Am. Dec. 647.
Municipal Coupon Bonds — Holder for Value without Notice — Defence of Ultra Vires. — Although the negotiable coupon bonds of a municipal corporation, or the proceeds of such bonds, may have been used to discharge an ultra vires contract of the corporation, this defence cannot be set up by the corporation against a bona fide holder for value of such bonds, acquired before maturity, without notice of such defence. If the corporation had power to execute the bonds, and the power has been executed in a lawful manner, and the bonds are free from condition, and exhibit all the requisite features of negotiability, the bona fide purchaser of such bonds, for value, acquires good title. Town of Clifton Forge v. The Brush Electric Co., 92 Va. 289, 23 S. E. Rep. 288.
Municipal Bonds — Sale at Less Than Par — Payment in Confederate Money. — A municipal corporation having a general authority under its charter to contract loans or cause to be issued certificates of debt or bonds, may issue coupon bonds and sell them at public auction for less than their par value, and for bonds sold during the war might receive payment for them in Confederate money. City of Lynchburg v. Slaughter, 75 Va. 57.
*283 Municipal Bonds — Conditions—Liability of Purchaser. —An individual purchasing1 the bonds of a municipal corporation, and having- no actual notice of any special directions given to the officers of the company in relation to the particular bonds purchased, will only be bound by such directions if he has been wilfully ignorant of them, and not merely where there has been a want of caution. DeVoss v. City of Richmond, 18 Gratt. 338, 98 Am. Dec. 647
Recovery of Bonds by City. — F was the owner of $8,700 of the certificates of stock of the city of A, which by a decree of the United States court in May, 1864, were confiscated and sold by the marshal, and $2,000 of it purchased by W; and at his request the marshal made a transfer of the same on the books of the city. When the stock became due W received from the city of A four coupon bonds of $500 each in exchange for his stock. In 1874 P sued the city for his stock and recovered it, the court holding that the decree of the United States court confiscating it was invalid. The city of A then sued W to recover the four bonds issued to him for the stock. Held, the city of A is entitled to recover the bonds. Webb v. City Council of Alexandria, 33 Gratt. 168.

E. Power of Taxation.

i. In General. — a grant by the legislature to a municipality of a general power of taxation confers upon the municipality all the power possessed by the legislature itself in respect to the imposition of taxes. The municipality may then tax all subjects within its jurisdiction, not withheld from taxation by the legislature, whether the state taxes them or not. Norfolk v. Norfolk Landmark Publishing Company, 95 Va. 564, 28 S. E. Rep. 959.
The legislature has absolute sovereign power of taxation, save so far as restricted by the federal or the state constitution. But all taxation— state, county or town-must be equal, uniform and ad valorem, except as to income, licenses and capitation. A succession tax is not a tax on property, in the sense of the constitution, art. 10, § 1. It is a premium demanded for the privilege of transmitting one’s estate. To impose a tax on such privilege is a power inherent in the legislature, in the absence of constitutional inhibition. Municipal corporations have no power of taxation, except the power be plainly and unmistakably conferred. The power to impose a succession tax may be delegated by the legislature to counties and municipal corporations. Peters v. City of Lynchburg, 76 Va. 927.
Every grant of the power of taxation to a municipal, or other subordinate body, must be strictly construed. And municipal officers must show, in the words of the charier, a warrant for whatsoever authority they assumed to exercise. City of Lynchburg v. N. & W. R. R. Co., 80 Va. 237.
Legislative Control. — A city charter is not a contract between the state and the city, securing to the city the absolute power of taxation beyond the control or modification of the legislature. The powers of exemption, as well as the power of taxation, is an essential element of sovereignty; and can only be surrended or diminished, in plain and explicit terms. Municipal corporations are mere auxiliaries of the government, established for the more effective administration of justice; and the power of taxation confined to them is a delegated trust. Richmond v. R. & D. R. Co., 21 Gratt. 604.
Construction of Statutes. — Section 31, c. 47, Code authorizes towns and villages chartered under such chapter to levy taxes, not exceeding one dollar on every hundred dollars of property within such municipality. Knight v. Town of West Union, 45 W. Va. 194, 32 S. E. Rep. 163, 1 Mun. Corp. Gas. 219, and note.
Taxation — Notice of Imposition — Constitutional Law. —The imposition of taxes and levies is a “taking” within the meaning of the constitution of the United States, and if the law under which property is assessed for taxes does not provide an opportunity for the owner to be heard and contest the justice of the assessment he is deprived of his property without due process of law, and the law is unconstitutional and void, and the assessment or levy is illegal. Section 45 of the charter of the city of Radford, being liable to objections of this kind, is unconstitutional and void. Heth v. City of Radford, 96 Va. 272, 31 S. E. Rep. 8; City of Norfolk v. Young, 97 Va. 728, 34 S. E. Rep. 886.
Erroneous Assessments — Construction of Statutes.— The method prescribed by sec. 444 of the Code for correcting erroneous assessements of real estate applies solely to the general assessment of land throughout the commonwealth every fifth year, and has no application to assessments made under special provisions contained in charters of municipal corporations. Heth v. City of Radford, 96 Va. 272, 31 S. E. Rep. 8.
Ad Valorem System. — Taxes imposed by municipal corporations must be equal and uniform and ad va-lorem. If so authorized, they may levy a tax on all business which cannot be reached by the ad valorem system. But under color of a license tax they cannot impose an unequal and uniform tax on property, Danville v. Shelton, 76 Va. 325.
Back Taxes. — The powers of a municipal corporation are to be construed strictly, and the power to tax must be plainly and unmistakably conferred; and, in the absence of legislative authority, the corporation has no power to levy back taxes; and where the charter empowers the council to “order the collection of taxes for any year,” this refers to taxes previously assessed, there being nothing in the charter authorizing a retrospective assessment. Whiting v. Town of West Point, 89 Va. 741, 17 S. E. Rep. 1.
Tax on Newspapers — Freedom of the Press. — A city ordinance which imposes a tax on the business of publishing a newspaper does not infringe upon the constitutional guaranty of the freedom of the press. Such guaranty was never intended to restrict the right of taxation for the support of the government. Nor is such ordinance in conflict with sec. 1, Art. X, of the constitution, which requires all taxation to be equal and uniform, nor with sec. 4, Art. X, which provides for a tax on licenses upon business which cannot be reached upon the ad valor&m system. City of Norfolk v. Norfolk Landmark Publishing Company, 95 Va. 564, 28 S. E. Rep. 959.
Taxation of Railroad Companies. — The 25th section of the act of March 18th, 1856, imposing taxes for the support of the state government, does not extend to exempt railroad companies, complying with said section, from taxation by a city government. The charter of the city of Alexandria gives the power to raise taxes for the use and benefit of the city ; provided the laws passed for the purpose shall not be repugnant to the laws and constitution of the state or of the United States. The proviso does not limit the power of the city to tax only such subjects as are taxed by the state. The city council of Alexandria may tax the real estate in the city, and the rolling stock, of the Orange and Alexandria railroad company; the residence or domicil of that company being in that city. The real purpose *284 and intention of the legislature is the thing to he ascertained in the construction of a statute: and to effect this the general meaning of the words may he restricted. Though it is true that laws conferring the power of taxation upon municipal corporations are to he construed strictly, it is also true that exemptions from taxation are to he construed strictly; and where the power has once heen conferred, it is not to he crippled or destroyed hy strained interpretations of subsequent laws. Orange & Alexandria R. Co. v. City Council of Alexandria, 17 Gratt. 176.
Power to Tax Non-Residents. — F, who lives outside of the city limits, rents a stall in the market-house of the city of Richmond, where he carries on his business as a butcher.. He prepares his meat for market at his house, and owns two carts and horses, which he used to bring his meats from his house to his stall, and take out such of it as is not sold; and he pays a tax on these carts and horses as property in the county. Held, under the charter of the city, the city council may require F to take out a license for so using his carts and horses, and to pay a tax on said license. Frommer v. City of Richmond, 31 Gratt. 646.
Power to Tax Non-Residents — License to Tax on NonResident Attorneys at Law. — The legislature has power to authorize municipal corporations to impose taxes on persons whose ordinary avocations are pursued within the corporate limits, although residing beyond those limits, the same as upon residents, and, in the case at bar, the city of Peters-burg has power, under its charter, to impose a license tax on an attorney-at-law having his office and place of business in the city and practicing his profession therein, although he resides outside of the city’s limits, in like manner as upon an attorney residing and doing business within the city. City of Petersburg v. Cocke, 94 Va. 244, 26 S. E. Rep. 576.
Taxation of Foreign Corporations. — The council of the city of Richmond has authority,mnder the charter of the city, to impose a license tax upon a foreign telegraph company having an agency in the city and doing business therein. And there is nothing in the constitutions and laws of the state or of the United States which forbids such a tax, if it is equal and just in its provisions. Though the ordinance of the city imposing taxes speaks only of persons or firms doing business in the city, yet it imposes a tax in terms on telegraph companies, and obviously intends to include incorporated companies as well as individuals. Corporations are to be deemed and taken as persons when the circumstances in which they are placed are identical with’ those of natural persons expressly included .in a statute. West. U. Tel. Co. v. City of Richmond, 26 Gratt. 1; Humphreys v. City of Norfolk, 25 Gratt. 97.
Unequal Taxation. — An ordinance imposed on “every one engaged in purchasing leaf tobacco in D a tax of ten dollars, and one per cent, on capital employed, and in addition fifteen cents per thousand pounds purchased monthly.” Reid, this feature is illegal. As a tax, fifteen cents on the thousand pounds, without regard to value, is unequal. As a license, it is not warrantable, because the business could have been reached on the ad valorem principle. Danville v. Shelton, 76 Va. 326.
Taxation — Capital Stock — Shares.—The capital stock and the shares of the capital stock are distinct things. Both maybe taxed, and it is not double taxation, where ordinance directs assessments of tax “on all personal property, money and credits, including all capital stock,” etc., the valuation of the personal property of a bank is rightly ascertained by adding to the paid up capital the demand notes of stockholders given for unpaid up capital stock, drawing interest and held by the bank. Domicile of holder of evidence of debt is the situs of the debt for taxation purposes. Notes held by a bank located in a city are taxable by said city, wherever the makers may reside, whether in or out óf the city or in or out of the state. Where tax has been lawfully assessed, and is not paid when due, of course the penalty imposed by the-ordinance for nonpayment of the tax may rightly be enforced. State Bank of Virginia v. City of Richmond, 79 Va. 113.
Taxation of Shares of Railroad Stock. — In City of Richmond v. Daniel, 14 Gratt. 385, it was held that, the shares of a railroad company are not liable to be taxed by the council of the city of Richmond, either under the charter of the city or under the Code.
Taxation of Property of Testator — Domicile.—Where, at the time of his death, the domicile of testator was beyond the corporate limits of a city, bonds belonging to his estate are not assessable and taxable by said city, though at the time the assessment and levy was made his executors resided within said city. City of Staunton v. Stout’s Ex’ors, 86 Va. 321, 10 S. E. Rep. 5.
Taxation of Lawyers. — The council of the city of Richmond may lay a tax upon lawyers as such. The ordinance of the council provides that lawyers and others shall be divided into six classes, and that those in each class shall pay a certain sum as his tax; and it directs that the committee of finance shall place each lawyer in the class to which they shall think he properly belongs, looking to all the circumstances of the case. And it is provided that when the committee has completed its classification, public notice shall be given, and any lawyer dissatisfied with his classification, may appear before the committee and have it corrected if erroneous. Held, the tax is not an income tax, nor are the duties imposed on the committee legislative, but ministerial; and the ordinance is not unconstitutional. Ould v. City of Richmond, 23 Gratt. 464, 14 Am. Rep. 139.
License Tax on “Every Attorney at Law.” — A city ordinance imposing a specific license tax “on every attorney-at-law” includes non-resident attorneys who have offices and practice their profession in the city, as well as resident attorneys. City of Petersburg v. Cocke, 94 Va. 244, 26 S. E. Rep. 576.
License Tax. — Section 5, of charter of city of Lynch-burg; granting authority to impose a license tax upon persons engaged in certain enumerated callings, and “upon any other person or employment, which it may deem proper, whether such person or employment be herein specially enumerated or not,” does not-empower the city to impose such tax upon a railroad corporation; which is neither a person nor an employment, within the ordinary acceptation of those words. City of Lynchburg v. N. & W. R. R Co., 80 Va. 237.
Licenses — Construction of Statute. — In Roche v. Jones, 87 Va. 484, 12 S. E. Rep. 965, it is held that § 550, Va.- Code 1887, applies only to state and not to municipal licenses, which may be prescribed to expire June 3rd instead of April 30th, of each year.
Licenses — Brokers—Interstate Commerce. — A license tax imposed by a city on a broker whose business is *285 confined to selling1 by sample and personal application, for non-resident principals exclusively, ¿roods belonging- to tbem in another state, for the purpose of introducing them into the state, is a regulation of interstate commerce and beyond the city’s power. Adkins v. City of Richmond (Va.), 3 Mun. Corp. Gas. 514.
Power to Exempt Property from Taxation. — Delegated power to tax, does not imply power to exempt from taxation, and where a municipality is authorized to tax all property, it can exempt none. Whiting et als. v. Town of West Point, 88 Va. 905, 14 S. E. Rep. 698.
This case criticised, overruled. or distinguished, the decisions in Williamson v. Massey, Auditor, 33 Gratt. 237; City of Petersburg v. Petersburg Ben. Association, 78 Va. 431; O. & A. R. Co. v. Alexandria, 17 Gratt. 176; Danville v. Shelton, 76 Va. 325.
Property Specially Exempted from Taxation. — The charter of the R. & D. Railroad Co. provides that “all machines, wagons, vehicles or carriages belonging to the company, with all their works, and ail profits which may accrue from the same, shall be vested in the respective shareholders forever, in proportion to their respective shares, shall be deemed personal estate, and exempt from any charge or tax whatever.” lleld\ (1) The real estate owned and used by the company for the purposes of their business, is embraced in the provision, and is personal estate. (2) All the said property, real and personal, is exempt from taxation, both state and municipal. (3) The exemption from taxation of the real estate of the company in the city of Richmond, is not unconstitutional as being in conflict with the charter of the city, previously granted, giving the city the power to tax real estate for the purposes stated in the city charter: the city having ample means of taxation left for the payment of her expenses and debts. Richmond v. R. & D. R. Co., 21 Gratt. 604.
Ferry Landing Owned by City Exempt from Taxa= tion — A lot in a city of N., owned and used by county of E. and city of P. as landing for ferry maintained by them, is exempt from taxation under Acts 1881-82, p. 382. Black v. Sherwood, 84 Va. 906, 6 S. E. Rep. 484.
2. Local Assessments.
In General. — Local assessments for street improvements are an exercise of the taxing power of the state, and article XIV of the amendments to the constitution of the United States applies to such assessments; and a law which authorizes such assessments without reasonable notice to the person of whom the assessmentis exacted, and without affording him an opportunity to appear and contest the legality, justice, and correctness of the assessment before it is finally determined upon, deprives such person of his property without due process of law, and is void. “Due process of law” requires that a person shall have reasonable notice, and a reasonable opportunity to be heard before an impartial tribunal, before any binding decree can be made affecting his rights to liberty or property. It is not enough that the owner may by chance have notice, or that he may, as a favour, have a hearing. The law itself must require notice to him, and give him a right to a hearing and an opportunity to be heard. While the legislature may prescribe the kind of notice and the mode of service, it cannot dispense with all notice. Violett v. City of Alexandria, 92 Va. 562, 23 S. E. Rep. 900.
Statutes authorizing local assessments on abutting lands or lots, to meet the expense of improvements to the street in front of such land or lots, levied according to the benefits to such land or lots, are not in violation of section 1 of article X of the constitution of this state, and are valid. Section 33 of the charter of the city of Alexandria, as amended by an act of the legislature approved March 1,1888, is not in conflict with said section of the constitution. Violett v. City of Alexandria, 92 Va. 562, 23 S. E. Rep. 900.
While the legislature may grant to municipal corporations the power to levy local assessments for street improvements, yet the statute making the grant must be strictly construed, and the municipality must keep closely within its provisions. If the statute conferring the power to make such assessments limits its exercise to the benefits, by the improvements, to the property assessed, or is not broad enough to confer on the municipality the power to select the mode of assessments, then an assessment by frontage is an unwarranted assumption of benefits, and does not meet the requirements of the statute, but is in conflict therewith. Tested by this rule, the ordinance of the city council of Alexandria, under which the assessment in the case at bar was made, is not authorized by the charter of said city under which the ordinance was passed. Violett v. Alexandria, 92 Va. 562, 23 S. E. Rep. 909. See also, 4 Va. Law Reg. 540, 547; and especially note to Hornung v. McCarthy, 3 Mun. Corp. Cas. 257; Sands, Receiver, v. City of Richmond, 31 Gratt, 571; City of Norfolk v. Ellis, 26 Gratt. 224; Richmond & A. R. Co. v. City of Lynchburg, 81 Va. 473; Davis v. City of Lynchburg, 84 Va. 861, 6 S. E. Rep. 230; Wilson v. Philippi, 39 W. Va. 80, 19 S. E. Rep. 553; Parkersburg v. Tavenner, 42 W. Va. 491, 26 S. E. Rep. 179. But compare, City of Norfolk v. Chamberlain, 89 Va. 196, 16 S. E. Rep. 730; McCrowell v. City of Bristol, 89 Va. 652, 16 S. E. Rep. 867.
The city council of Richmond has authority under its charter and the constitution of Virginia to require the owner of a lot upon a street which has been graded, paved and guttered by the city to pave the sidewalk in front of his lot, and when it is at the corner of a street, to pave the sidewalk on the side of the lot. And if the owner does not have the work done within the time prescribed by the ordinance, the city may have it done and collect the money from him. Sands, Receiver, v. City of Richmond, 31 Gratt. 571.
Local Assessments — Personal Liability for — Constituí tional Law. — An act of General Assembly which empowers the council of a city to determine what portion, if any, of certain street improvements shall be paid by the owners of the real estate benefited thereby, or bounding and abutting on said streets, and to assess the same by the front foot and which declares that the assessment thus made shall constitute a lien on the property, “and shall also be a personal debt of the owner of the property,” authorizes a system of taxation which, in so far as it makes such assessment the personal debt of the owner of the property, is not equal and uniform, and is in conflict with section 1, Article X of the constitution of the state, and is therefore, in this respect, void. Asberry v. Roanoke, 91 Va. 562, 22 S. E. Rep. 360.
Local Assessments — Charge In Rem — Construction of Charter. — By a section of its charter, power is conferred on a city “to specifically tax a lot adjoining a street on which paving is done or a curbstone put down (whether on the sidewalk or carriageway). not exceeding two-thirds of the expense of the curbstone or paving on that half of the street opposite *286 the lot.” Held: (1) This section does not authorize a special assessment for street improvements, to he made a personal charge against the owner, hut only a charge on the lot so taxed. (2) Nor does this section authorize a tax for the grading of the street, hut only for the paving and laying down curbstone on the same. Green v. Ward, 82 Va. 324.
Local Assessments — Charge In Personam. — The provision of the charter authorizing such local assessments, if valid, can he charged only upon the abutting property, and.cannot he levied on the personal property of the abutting owners. McCrowell v. City of Bristol, 89 Va. 652, 16 S. E. Rep. 867.
Local Assessments — Not a Lien on Lots — Anomalous Decision. — The act authorizing an assessment for paving the streets of Norfolk, does not impose a lien upon the lots in the borough, for the payment of the assessment, hut gives a personal remedy only, against the freeholders in possession, and not against reversioners and remaindermen. Moseley v. Boush, 4 Rand. 392. This decision is anomalous and seems never to have been followed.
Local Assessments in the Ratio of the Front Foot.— The city council of Norfolk has authority under the charter of the city and the constitution of Virginia, to assess the expense, or a part of the expense, of paving a street upon the owners of the property on the street in the ratio of the front foot of their lots facing on the street. Norfolk City v. Ellis, 26 Gratt. 224; Davis v. City of Lynchburg, 84 Va. 861, 6 S. E. Rep. 230; R. & A. R. Co. v. City of Lynchburg, 81 Va. 473.
Assessment by Front Foot. — The provisions of the charter of Lynchburg empowering the council, when water mains are laid in the street, to levy an annual special assessment on the real estate on both sides of such street to meet the expenses of the waterworks, and further authorizing it to exempt from such assessment any property to which water is supplied and water rates charged, are not repugnant to the state constitution. R. & A. R. Co. v. City of Lynchburg, 81 Va. 473; Davis v. City of Lynchburg, 84 Va. 861, 6 S. E. Rep. 230.
Enforcement of Local Assessments — Construction of Charter — Constitutional Law. — A section of a municipal charter which authorizes local assessments by the council for street improvements, upon the written petition of a majority of the owners of the property to be assessed, or, without such petition, by a vote of a maj ority of all the members elected to the council, after publication for twenty days, in two or more newspapers published in the municipality, of a resolution declaring such assessment to be expedient, is in contravention of amendment XIV of the constitution of the United States, and therefore void, as it provides no tribunal before which, place where, or time within which, parties to be affected may contest the legality, justice, or correctness of the assessment. If the publication is intended as notice to appear before the council and contest the assessment, and that be the law, it is not full and clear enough to disclose that fact to a person of ordinary intelligence. Norfolk v. Young, 97 Va. 728, 34 S. E. Rep. 886.
By a section of its charter the collecting officers of a city are empowered to distrain for taxes and levies due the city. Held, this section does not empower those officers to distrain for special assessments for street improvements, which are chargeable on real estate only. Green v. Ward, 82 Va. 324.
III. DUTIES AND LIABILITIES.
A. In General.
Governmental Duties — Private or ninisterial Duties —Liability.—The powers conferred upon a municipal corporation for the government of that portion of the public residing within its limits are called governmental, legislative, or discretionary powers. For injuries resulting from the failure to exercise these powers, or for their negligent or improper exercise, the municipality is not liable. But powers and privileges conferred for its private advantage impose corresponding duties which are ministerial and absolute. For injuries resulting from a failure to exercise these powers and duties, or for negligence in their exercise the municipality is liable in an action for damages in the same manner as a private individual. Jones v. City of Williamsburg, 97 Va. 722, 34 S. E. Rep. 883, 3 Mun. Corp. Gas. 444, and note.
Non-Liability for Neglect in Governmental Capacity. —“In its governmental capacity, a municipality is strictly a branch of the state government, within the extent of its limitations, both as to territory and powers granted. And in the discharge of their duties, governmental and discretionary, its officers are public officers, for whose acts the municipality is in no wise liable. Gibson v. City of Huntington, 38 W. Va. 177, 18 S. E. 447; Brown’s Adm’r v. Town of Guyandotte, 34 W. Va. 299, 12 S. E. 707; Thomas v. Town of Grafton, 34 W. Va. 282, 12 S. E. 478; Mendel v. Wheeling, 28 W. Va. 233; Orme v. City of Richmond, 79 Va. 86; City of Richmond v. Long’s Adm’rs, 17 Gratt. 375; Barnes v. District of Columbia, 91 U. S. 540.” City of Charleston v. Beller, 45 W. Va. 44, 30 S. E. Rep. 152.
As to the powers and functions of an incorporated town of a public governmental character, it is not liable for damages caused by the wrongful acts or negligence of its officers or agents therein. Bartlett v. Town of Clarksburg, 45 W. Va. 393, 31 S. E. Rep. 918, 1 Mun. Corp. Cas. 43, and note; Brown’s Adm’r v. Town of Guyandotte, 34 W. Va. 299, 12 S. E. Rep. 707.
Special Instances of Non-Liability. — A city owning waterworks, not reauired by its charter, and charging consumers water rents, is not liable for loss, by a fire, caused by its negligence in the care of the works. Mendel v. Wheeling, 28 W. Va. 233, 57 Am. Rep. 664.
A city is not responsible for property destroyed by its police force, without any authority from the city, or its governing power. Harman v. City of Lynchburg, 33 Gratt. 37; Brown’s Adm’r v. Guyandotte, 34 W. Va. 299, 12 S. E. Rep. 707.
Municipal corporations, in the exercise of their political, discretionary, and legislative authority, are not liable for the misconduct, negligence or omissions of the agents employed by them. City of Richmond v. Long, 17 Gratt. 375, 94 Am. Dec. 461.
In Duncan v. City of Lynchburg (Va.), 34 S. E. Rep. 964, the city was held not liable for a nuisance, occasioned by a work it had no authority to operate.
The power of the common council of a city, town, or village to prevent or abate nuisances is governmental and discretionary, and for the proper exercise thereof the city cannot be held liable for the loss or destruction of property or damages occasioned thereby. Such loss, if any, must fall upon the actual or proposed nuisancer. Wood v. City of Hinton (W. Va.), 3 Mun. Corp. Cas. 547.
A town is not liable for damages for the death of a person caused by the burning of its jail while such person was confined therein by town authority for *287 a violation of its ordinances, though such Are was attributable to the wrongful act or negligence of the officers or agents of the town. Brown's Adm’r v. Town of Guyandotte, 34 W. Va. 299, 12 S. E. Rep. 707.
The mayor of the town of Grafton having imposed fines upon a citizen of the town, execution therefor came into the hands of the town sergeant, who levied upon the separate property of the offender’s wife, and sold the same at a sacrifice. Held, (1) that the town could not be held liable for the tortious act of the sergeant, unless it was proven that the town directed, counseled, or otherwise participated in the perpetration of the wrong; (2) in levying the writ, the sergeant acted not as a municipal, but as a public, civil officer, and the doctrine of respondeat superior has no application: (3) as the net proceeds of the sale of the property improperly seized were paid over to the town, the latter would be liable for such net proceeds in an action for money had and received. Thomas v. Town of Grafton, 34 W. Va. 282, 12 S. E. Rep. 478.
Where,Negligence of City Amounts to a Taking of Private Property. — Where a person is permitted and aided by a city to alter the course of a sewer over which it has assumed control (it matters not by whom it was originally constructed), and such alteration is so negligently effected as to cause the water and filth to flow into the plaintiff’s cellar, the city is liable for the damages resulting therefrom. Chalkley v. City of Richmond, 88 Va. 402, 14 S. E. Rep. 339.
Negligence in Proprietary Character.--The city of Petersburg owns a wharf in the Appomattox river, for the use of which the city is authorized to charge and does charge wharfage. In October 1872 the vessel of A not being able to get to the wharf at which she was to deliver her loan on account of an obstruction in the stream by another vessel, drew up to the city wharf and moored to it, and whilst waiting there she sunk on the next low water, from a pile going through her bottom. This pile was oak, being about two feet from the wharf, in the stream where a vessel at the wharf would probably lie, and was visible at low water, though it was some two feet or more above the bed of the river, and was firmly fixed there. Held, the allowing such an obstruction in the place where it was, was negligence; and the city of Petersburg being the owner of the wharf, is liable for the damages occasioned by it. City of Petersburg v. Applegarth’s Adm’r, 28 Gratt. 321.
Negligence in Exercise of Ministerial Duties. — Municipal corporations, in discharge of ministerial or specified duties assumed in consideration of the privileges conferred by their charter, are liable for the misconduct, negligence or omission of their agents; and this, though there be the absence of special rewards or advantages. City of Richmond v. Long’s Adm’rs, 17 Gratt. 375, 94 Am. Dec. 461.
Liability of City for the Torts of Its Officers. — A public officer is not responsible to third persons for the negligence or default of his official subordinates. This principle of exemption from liability, for the defaults of its officers is not extended to municipal corporations, where the authority, though for the accomplishment of objects of a public nature, and for the benefit of the public, is one, from the exercise of which, the corporation derives a profit, or where the duty may be presumed to be enjoined upon the corporation in consideration of privileges granted. Sawyer v. Corse, 17 Gratt. 230.
Ministerial Duties — Negligent Discharge — Liability.— A municipal corporation is liable forinjuries caused by its negligence in the discharge of, or failure to discharge, such duties as are purely ministerial, and not governmental or discretionary. Gibson v. City of Huntington, 38 W. Va. 177, 18 S. E. Rep. 447.
Municipal corporations, in discharge of ministerial or specified duty, are liable for the misconduct, negligence or omissions of their agents. City of Richmond v. Long’s Adm’rs, 17 Gratt. 375; Orme v. City of Richmond, 79 Va. 86.
Negligent Hanagement of Corporate Property — Liability. — A municipal corporation is liable for injuries sustained by the negligent management of its corporate property, to the same extent that private individuals are liable for the same character of negligence. Gibson v. City of Huntington, 38 W. Va. 177, 18 S. E. Rep. 447.
Liability for Ultra Vires Acts. — The ordinance of the city of Richmond, adopted April 2, 1865, on the eve of the evacuation of the city by the Confederate forces, directing the destruction of all liquor in the city, and pledging the city for its payment, is ultra vires and void, and the owner of the liquor cannotrecover the value thereof from the city. The destruction of the liquor was not an exercise of the city’s power of eminent domain, but was a police regulation for the preservation of peace and good order in the city. The charter of the city limited its exercise of the right of eminent domain to the acquisition of “ground for the purpose of opening or extending its streets,” or other public purposes. The power exercised by the city council was not conferred, either in express terms or by fair implication, by the city’s charter or by the general laws, nor is it indispensable to the performance of its corporate duties, or the accomplishment of the purposes of its incorporation. Wallace v. City of Richmond, 94 Va. 204, 26 S. E. Rep. 586; Jones v. City of Richmond, 18 Gratt. 517, disapproved.
Liability of City for Damage by Railroad on Streets. —Where work is done by a railroad company in a street of a city, under authority from the city to occupy the street for its track, the city is not liable to adjoining lot owners for injury to their lots from such work, but they must look to the company. Jordan v. City of Benwood, 42 W. Va. 312, 26 S. E. Rep. 266.
Use of Streets by Railroad — Liability of City for Damage from Defective Tunnel. — A city is not liable for damages resulting from the defective construction of a tunnel under one of its streets by a railroad company, when the railroad company is authorized to construct its road from said city, and the city permits the company to enter and use its streets for its roadway, in pursuance of authority vested in the city by its charter. The right of the city to allow the use of its streets by the railroad company includes the right to permit the company to run under the streets as well as upon them. But permission to enter and use the streets confers no right on the railroad company to take or invade the property of any citizen without just compensation, nor does it sanction any tort the company may commit. Nor does the taking of a bond from the company to indemnify the city against loss by reason of the failure of the company to carry out its contract with the city to render the city liable for the torts oí the company. The company alone is liable for its torts. It is in no sense the agent of the city. Terry v. City of Richmond, 94 Va. 537, 27 S. E. Rep. 429.
Liability of Municipal Property to Execution. — in Brown v. Gates, Treasurer, etc., 15 W. Va. 131, a writ of fieri facias may issue under provisions of the Code *288 of 1868 of this state against a political public municipal corporation upon a Judgment fora debt or damages rendered by a court of competent jurisdiction in this state. It seems that such a corporation may sometimes own some descriptions of property strictly private or interests in such property, or have debts of a strictly private nature due to it, which are subject to levy and to the lien of such writ of fieri facias. But perhaps property charged with public trusts, or owned or used by such corporation for public purposes, such as fire-engines, etc., are not subject to levy, or to the lien of a fieri facias, upon the same principle that the taxes and revenues of such corporation are not subject to the levy or lien of a fiei'i facias; but as that question is not involved in this case it is not now decided. See also, monographic note on “Executions” appended to Paine v. Tutwiler, 27 Gratt. 440.
Attachment or Garnishment of Municipal Corporations. — A municipal corporation may be garnished or attached for a debt due to one of its creditors just as a natural person may be. Such a proceeding is not contrary to the public policy of this state. Portsmouth Gas Co. v. Sanford, 97 Va. 124, 33 S. E. Rep. 516, 5 Va. Law Reg. 172.
Mechanics’ Liens on Property of Municipality. — A mechanic’s lien cannot be claimed against public buildings erected by the state, or cities or counties, for public persons. Hicks v. Roanoke Brick Co., 94 Va. 741, 27 S. E. Rep. 596; Manly Mfg. Co. v. Broaddus, 94 Va. 547, 27 S. E. Rep. 438; Phillips v. University of Virginia, 97 Va. 472, 34 S. E. Rep. 66, 5 Va. Law Reg 466.
Subcontractor’s Lien. — Furnishing materials to be used by a contractor in the erection of a public improvement for a city, which materials are so used, does not give any lien on the fund due by the city to the contractor. Hicks v. Roanoke Brick Co., 94 Va. 741, 27 S. E. Rep. 596.
Taking of Private Property — Liability.—On the 2d of April, 1865, in anticipation of the evacuation of the city of Richmond by the Confederate army, the council of the city ordered the destruction of all the liquor in the city, and undertook to pay for it. The council, under the charter of the city, had authority to make the order and the pledge; and the city of Richmond is responsible for the value of the liquor destroyed under the order of the council. Jones v. The City of Richmond, 18 Gratt. 517.
Liability for Notes Issued during the War. — The city of L., on the 8th of May, 1862, passed an ordinance for the issue of $120,000 of small notes, and directed its treasurer to exchange them for coin or currency, which should be held or invested for the redemption of the notes. From May 8, to October, $72,418 was received in currency in exchange of the notes, of which $68,000 was invested in Confederate bonds and the balance was held in hand. The notes were directed to express, and did express, on their face— received in payment for city taxes and all other city dues. The city did not levy a tax for the redemption of the notes. Held: (1) The notes were issued and received with reference to Confederate currency as a standard of value. (2) By the act the notes were required to be redeemed within the period prescribed by the act. (3) The city of L. having provided for the issue of her notes, under the act of March 29, the act of May 15, extending the time of redemption, does not apply to the notes issued by that city. (4) The city of L. having provided ample funds for the redemption of her notes, she was not required to levy a tax for their redemption. (5) Some of thesenotes nothavingbeen presented for redemption within the time prescribed by the act of March 29, the holders of them are not entitled, after the war, to set them off against taxes due from them to the city; and the fund which had been provided and held ready for their payment, having perished, without fault of the city, the city of L. is not under any obligation in law or equity, to redeem them. Miller v. City of Lynchburg, 20 Gratt. 330.
Bicycles — Failure to Pass Ordinance. — Bicycles are vehicles, and should not be ridden on sidewalks, but, if so ridden, the municipality is not liable for damages resulting from a collision with a pedestrian, merely because it failed to pass an ordinance forbidding such use of its sidewalks. Jones v. City of Williamsburg, 97 Va. 722, 3 Mun. Corp. Cas. 444 and note, 34 S. E. Rep. 883.
Jailer’s Fees — Construction of Statute. — Code, § 3532, fixing the fees a jailer is entitled to for receiving and supporting prisoners, applies only to payments out of the state treasury for receiving and supporting prisoners charged with crime, and not to payments out of a city’s treasury to the keeper of the city jail for receiving and supporting prisoners charged with violation of its ordinances. City of Richmond v. Epps (Va.), 35 S. E. Rep. 723.
Personal Injuries — Fireworks—Consent of Officers— Liability. — An incorporated town is not liable for personal injuries occasioned by the firing of squibs, rockets, fireworks, and firearms on the streets by a crowd of citizens, although such acts be done with the knowledge and consent of the mayor, council, police, and other officers of such corporation. Bartlett v. Town of Clarksburg, 45 W. Va. 393, 31 S. E. Rep. 918, 1 Mun. Corp. Cas. 43, and note.
Child Drowned in City Reservoir — Negligence—Liability of City. — A landowner is under no duty to a mere trespasser to keep his premises safe, and the fact that the trespasser is a child does not raise a duty where none otherwise exists. Such a trespasser, injured on such premises, cannot recover of the landowner by reason of the unsafe condition of the premises, unless this negligence be so gross as to amount to a wanton injury. Frost v. Eastern R. R., 64 N. H. 220, 9 Atl. Rep. 790; Ritz v. Wheeling, 45 W. Va. 262, 31 S. E. Rep. 993, 1 Mun. Corp. Cas. 360, and note.
Duty of Draining Lots. — A city is not bound to furnish drains or sewers to relieve a lot of its surface water, whether its own or that flowing from other premises. Jordon v. City of Benwood, 42 W. Va. 312, 26 S. E. Rep. 266.
Payment to City by nistake. — A citizen of Richmon d pays money to the corporation, under a belief of both parties, that it was due for city taxes imposed by an ordinance of the corporation; admitting that the money was paid under a mistake of the meaning of the ordinance, and that the ordinance did not impose such a tax, yet Jield, it cannot be recovered back, in an action for money had and received against the corporation. Mayor, etc., of Richmond v. Judah, 5 Leigh 305.
Exclusion of Territory from Corporate Limits. — Act Feb. 28,1872, “for the relief of SamuelW. Johnston,” providing “that the farm of Samuel W. Johnston, on which he now resides, be, and the same is hereby, excluded from the corporate limits of the city of Huntington,” did not exclude any portion of the farm sold and conveyed by Johnston before the act was passed. Phillips v. City of Huntington, 35 W. Va. 406, 14 S. E. 17.
*289 B. Relating to the Condition of Streets and Side»» walks.
Conditions of Streets and Sidewalks — Degree of Care Requisite. — A municipal corporation is not an insurer against accidents upon its streets and roads. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets and roads are in a reasonably safe condition for travel in ordinary modes, with ordinary care; and whether so or not is a practical question to be determined in each case by its particular circumstances. While the liability of municipal corporations in such cases is in its nature absolute, that does not refer to the cause of action. The cause of action must exist before liability arises, — such cause as raises the liability. Van Pelt v. Town of Clarksburg, 42 W. Va. 218, 24 S. E. Rep. 878; Yeager v. City of Bluefield, 40 W. Va. 484, 21 S. E. Rep. 752.
Municipalities are simply required to keep streets and sidewalks in a reasonably safe condition for persons traveling in the usual modes, by day and night, and exercising ordinary care. Waggener v. Town of Point Pleasant, 42 W. Va. 798, 26 S. E. Rep. 352.
General Duty of City — Construction of Term “The Public.” — A city is bound to keep its streets and sidewalks in a reasonably safe condition for the use of the public, and for a failure so to do it is liable for resulting damages to one injured in consequence thereof while exercising such degree of care and caution as, under the circumstances, including age and intelligence, might reasonably be expected. “The public” embraces “all persons.” City of Roanoke v. Shull, 97 Va. 419, 34 S. E. Rep. 34; dictum in Fry v. Albemarle Co., 86 Va. 195, 9 S. E. Rep. 1004, 19 Am. St. Rep. 882.
Defects — Notice-Reasonable Time to Repair. — A city is entitled to a reasonable time after the discovery of a defect in its sidewalks, within which to remove or remedy the same, and is not liable for injuries resulting from such defects before that time. City of Lynchburg v. Wallace, 95 Va. 640, 29 S. E. Rep. 675.
Absolute Liability. — A municipal corporation is absolutely liable for injuries caused by its failure to keep in repair the streets, alleys, sidewalks, roads, and bridges. Chapman v. Milton, 31 W. Va. 385, 7 S. E. Rep. 22; Gibson v. City of Huntington, 38 W. Va. 177, 18 S. E. Rep. 447.
Notice of Defects. — A city charged with keeping the sidewalks of its streets in repair is liable for personal injuries caused by a defective sidewalk, whether it had notice of the defect or not. Evans v. City of Huntington, 37 W. Va. 601, 16 S. E. Rep. 801.
Notice of Defective Condition. — A municipal corporation is only liable for negligence in keeping its streets in repair, when it can be imputed with notice of such defects. Hence when the injury is caused by mere passive neglect or nonfeasance on the part of the city it is essential that the city should have express or constructive notice of the defect in the street, in order to render it liable for injuries occasioned thereby. In such case notice to the city officials is notice to the city. McCoull v. City of Manchester, 85 Va. 579, 8 S. E. Rep. 379.
Territorial Extent of Duty — Evidence.—The duty of a city to keep its sidewalks in a reasonably safe condition for the use of the public, extends to its territorial limits, and it cannot escape liability by showing that it has laid out more streets and sidewalks than it can keep in a reasonably safe condition. In an action to recover damages for an injury resulting from a failure to keep its sidewalks in a reasonably safe condition, evidence as to the number of miles of streets and sidewalks within the city limits is irrelevant. City of Roanoke v. Shull, 97 Va. 419, 34 S. E. Rep. 34.
“Reasonable Care” — Question for Jury.— What is reasonable care on the part of a city in keeping its footways in a reasonably safe condition, is a question for the jury, under all the circumstances of the case, including the age of the party injured in consequence of alleged defects; and cannot be shown by expert testimony. City of Roanoke v. Shull, 97 Va. 419, 34 S. E. Rep. 34.
City Streets — Obstructions—Snow and Ice — Negli= gence — Duty of Passenger. — If a city negligently permits its sidewalks to become obstructed by the accumulation thereon of snow and ice, and, after notice thereof, fails to use due care to remove such obstruction, and in consequence thereof, a traveller is injured, the city is liable in damages for such injury, provided the traveller exercised ordinary care, under all the circumstances, to avoid the negligence of the city. City of Lynchburg v. Wallace, 95 Va. 640, 29 S. E. Rep. 675.
Duty of Traveller. — Where a traveller or pedestrian, in passing along a street, sees an obstruction therein, it is his duty to exercise greater care, whether the circumstances are sufficient to arouse his fear or not. City of Richmond v. Leaker (Va.), 87 S. E. Rep. 348.
It is negligence in a city to allow its streets to remain obstructed at night, without taking reasonable and proper precautions to light them so as to enable persons travelling thereon to observe the obstruction by the use of ordinary care. City of Norfolk v. Johnakin, 94 Va. 285, 26 S. E. Rep. 830.
Contributory Negligence of Plaintiff. — Though it is the duty of a city to use reasonable care to keep its streets and sidewalks in a safe condition for travel, it is equally the duty of a traveller thereon, to exercise ordinary care, and contributory negligence on the part of the latter whereby he is injured will preclude a recovery against the city. Clarke v. City of Richmond, 83 Va. 355, 5 S. E. Rep. 369; City of Roanoke v. Harrison (Va.), 19 S. E. Rep. 179; City of Richmond v. Courtney, 32 Gratt. 792; Moore v. City of Richmond, 85 Va. 543, 8 S. E. Rep. 887; Piedmont, etc., Co. v. Patteson’s Adm’x, 84 Va. 771, 6 S. E. Rep. 4; Richmond, etc., R. Co. v. Morris, 31 Gratt. 200.
Cities are not insurers of the safety of their streets and sidewalks; but they must use reasonable care to keep them in safe condition for travel in the ordinary modes by day and by night, and for the negligent failure so to do they are liable to one who, while so travelling and exercising reasonable care, is injured by reason of their negligence. See note, 1 Mun. Corp. Cas. 58; dictum in Gordon v. City of Richmond, 83 Va. 436, 2 S. E. Rep. 727.
Defective Sidewalks — Latent Defects — Contributory Negligence. —A person who uses a sidewalk or other highway, which his observation, prudently exercised, would inform him was dangerous, takes the risk of such injuries as may result to him by open and apparent defects, such as his observation ought to have detected and avoided; but if the injury does not result from these, but from another and latent defect, which no reasonable degree of prudence or care could detect, he will not be considered as taking the risk of injury from this latent defect. Moore v. City of Huntington, 31 W. Va. 842, 8 S. E. Rep. 512.
In an action against a municipal corporation for personal injuries, plaintiff testified that she fell *290 o ver a rock while she was walking- in the hark, on a street that she knew to he obstructed and dangerous, though there were no danger signals to mark the obstructions. Held,, that plaintiff was guilty of contributory negligence, and her evidence should have been'excluded from the jury as insufficient to sustain the issue on her part. Hesser v. Grafton, 33 W. Va. 548, 11 S. E. 211.
Liability for Injury near but Not upon Street.— Where a traveler unnecessarily, for his own convenience, leaves the highway, and in so doing meets with an accident outside of the highway, the city cannot be responsible, no matter how near the highway the obstruction may be. Biggs v. City of Huntington, 33 W. Va. 55, 9 S. E. 51.
For What Kind of Injuries City Liable. — Under section 53, of chapter 43, of the Code, any person who sustains a direct injury to his person or property, — for instance, having a limb broken or a horse disabled, —by reason of a street in a town being out of repair, may recover damages for such injury by an appropriate action, in a court of competent jurisdiction, against said town. But one who suffers an injury only in his business from a street being out of repair cannot recover damages therefor from a city or town under section 53, of chapter 43, of the Code. Hale v. Town of Weston, 40 W. Va. 313, 31 S. E. Rep. 743.
Liability of City for Injury to Business. — The proprietor of a brickyard who is engaged in the manufacture of brick in the vicinity of a city or town, and in the erection of-houses in said town or city, who, in common with others, is injured in his business by reason of the municipal authorities thereof failing to keep a street in repair which constitutes the highway from said town passing said brickyard, cannot maintain an action for damages against said city or town for losses sustained by him in his business. Hale v. Town of Weston, 40 W. Va. 313, 31 S. E. Rep. 743.
Personal Injuries — Rope across Sidewalk — Negligence —Question for Jury. — In an action of trespass on the case against a city to recover damages for an injury claimed to have been sustained by tripping and failing over a rope stretched across one of its sidewalks, in which the testimony of the plaintiff shows that he was ignorant of the existence of such obstruction, and that, although there were electric lights in the immediate neighborhood of the rope, yet the shadow of the telegraph pole to which it was tied obscured the rope, the question of negligence on the part of the defendant was one for the jury. Where a party is injured by an obstruction on a sidewalk in a town, the question as to whether said town has been negligent in allowing such obstruction to be and remain on the sidewalk depends upon the circumstances of the particular case. Arthur v. City of Charleston (W. Va.), 2 Mun. Corp. Cas. 326.
Defective Streets — Unmanageable Horse. — Where a boy 17 years of age is driving an open buggy along a street, with two companions, younger than himself, behind a horse which has contracted the vicious habit of backing, and which, becoming frightened at escaping steam from a locomotive engine, stops and trembles for a moment, and, on being struck with a whip, commences backing, and in spite of whips and Words continues to back the buggy some 35 or 26 feet on the surface of the street, and then down a steep bank, by reason of which one of the occupants was injured, if sufficient time elapses between the fright of the horse and the accident to permit the driver, a man of ordinary prudence, to make a proper effort to regain c ontrol of the frightened animal, even though he should fail, the city would not be liable for its negligence in failing to maintain a rail or barrier along said embankment, as the injury must be attributed to the viciousness of the horse, rather than the defect of the street. It is not the duty of towns to provide streets which shall be safe for runaway or unmanageable horses, or such as have escaped from the control of their drivers without the fault of the town. Hungerman v. City of Wheeling, 46 W. Va. 761, 34 S. E. Rep. 778, 3 Mun. Corp. Cas. 92.
Permitting Dangerous Use of Streets. — An incorporated town is not liable for personal injuries occasioned by the firing of squibs, rockets, fireworks, and firearms on the streets by a crowd of citizens, although such acts be done with the knowledge and consent of the mayor, council, police, and other officers of such corporation. As to the powers and functions of an incorporated town, of a public governmental character, it is not liable for damages caused by the wrongful acts or negligence of its officers or agents therein. Bartlett, Plff. in Err., v. Town of Clarksburg (W. Va.), 43 L. R. A. 295.
Negligence in Keeping in Repair — Liability.—When a municipal corporation is empowered by its charter to lay off, pave, and keep in repair its streets, and to levy taxes for such purposes, it is liable for injuries caused by neglect to keep its streets in repair. City of Roanoke v. Harrison (Va.), 19 S. E. Rep. 179; Noble & Wife v. The City of Richmond, 31 Gratt. 271.
Defective Crossing — Liability of City. — In an action against a city for injuries occasioned by a defective street crossing, it appeared that plaintiff, after passing over a board crosswalk, had to step down about 12 inches to a platform of rock and earth 15 inches' wide, and then step over a gutter 18 inches wide to another crossing made of flagstones. This crossing was at least 17 inches wide, was about on a level with said platform, and, through constant snow and rain, it had become nearly covered with mud. The plaintiff saw it was a bad crossing, but, being in a hurry, tried to jump over it, and in so doing stepped upon an uneven part of the flagging, where it was raised, and fell. Held, that the city was not liable. City of Roanoke v. Harrison (Va.), 19 S. E. Rep. 179.
Negligence of Contractor — Liability of City. — 'Where a dangerous excavation is made in a city street and left open without proper guards, covering or lights, by contractor with the city for building a sewer, the city is liable to a person injured directly thereby, although it had no immediate control over the workmen, and had stipulated in the contract that proper precautions should be taken by the contractor for the protection of the public, and that he -should be liable for accidents occasioned by his neglect. Wilson v. City of Wheeling, 19 W. Va. 323, 42 Am. Rep. 780.
Injury Resulting from Excavation — Liability of City. —Such a corporation having by its charter power tc ■ldy out, improve, light and keep its streets in order, is liable in damages to any person who may sustain injuries by reason of its neglect to keep its streets in proper and safe condition, if it has notice, express or implied, of the defect. And where it permits an excavation to remain without proper guards so near the highway that one rightfully using it may, with, out fault, by unintentional deviation, or accidental misstep, sustain injury by falling into such excava-, tion, it is also liable. Clark v. City of Richmond, 83 *291 Va. 355, 5 S. E. Rep. 369; Noble v. City of Richmond, 31 Gratt. 371.
Approaches to Streets. — In Orme v. City of Richmond. 79 Va. 86. it is held that a city is hound to use all necessary measures to guard against iniury to persons coming upon its streets from private way over adjoining lots, upon that portion of its .streets which may he enclosed hy harriers.
Delegation of Duty. — The grant of power, in the charter of a city, to the council, to lay out, improve, light, etc., its streets, is a grant to the corporation, and is of such a character as to prevent its exercise hy any other person or body. Noble & Wife v. The City of Richmond, 31 Gratt. 271.
Proof That Certain Place Is a Public Street. — In an action for injuries received on a street or sidewalk of a city the plaintiff makes out a prima facie case when he proves that the authorities of such town or city have treated the place where the injury was received as a public street, hy taking charge of it and regulating it as they do other streets, and that the accident resulted from a defective sidewalk, which was out of repair. Phillips v. City of Huntington, 35 W. Va. 406, 14 S. E. Rep. 17.
Abandonment of Street by Municipality — Burden of Proof. — When a public road is taken into a city, town, or village by its charter of incorporation, it becomes the duty of such city, town, or village to keep such road in repair, unless it is abandoned as a public road in the manner provided by law. Proof of abandonment devolves on the city, town, or village. Hanley v. City of Huntington, 87 W. Va. 578, 16 S. E. Rep. 807.
In an action against a city for personal injuries caused by a defective street, the burden of proving that the street had been abandoned rests on defendant. Hanley v. City of Huntington, 87 W. Va. 578, 16 S. E. Rep. 807.
C. In Connection with the Improvement of Streets and Sidewalks.
Improvement of Streets -Degree of Care Requisite.— A city, acting within its charter powers in improving its streets, is the agent of the state, and is not answerable for consequential damages, where the work is done with care and skill, and does not actu* ally encroach upon private property. Home Building, etc., Co. v. Roanoke, 91 Va. 52, 20 S. E. Rep. 895.
A municipal corporation is not liable for consequential damages from improving its streets, where it exercises reasonable care and skill in the performance of the work which it is authorized to do, and no part of the lands of others is .actually taken. But, in the absence of such care and skill-, it is liable for all damages not necessarily incident to the work, and which are chargeable to the unskillful or improper manner of executing it. Powell v. Town of Wytheville, 95 Va. 73, 27 S. E. Rep. 805.
Want of Due Care — Liability—If a municipal corporation in improving its streets, fills up a street and does it in such way that the water which before had been carried off by gutters, is thrown back upon an adjoining lot, the corporation will be liable for the damage to the lot, if by proper care and means it might have been prevented. Smith v. The City Council of Alexandria, 33 Gratt. 208; Powell v. Wytheville, 95 Va. 73, 27 S. E. Rep. 805.
Damage — Remedy.—If damage results to an adjacent lot owner, from the improper manner in which a municipal corporation executes a lawful work, such damage is not necessarily incident to the accomplishment of the work, and the remedy is by an action at law. Courts of equity cannot interfere by injunction with the exercise in good faith by municipal corporations of discretionary powers conferred upon them by law. The apprehension of the lot owner that the corporation may not perform a lawful work in a proper manner is no ground for an injunction. Courts of equity are without jurisdiction to fix the grade of streets, or the manner in which the work shall be done by municipal corporations invested with discretionary powers in the premises. Town of Harrisonburg v. Roller, 97 Va. 582, 34 S. E. Rep. 523.
Consequential Damage — Damnum Absque Injuria. — A municipal corporation, when authorized by its charter, may make, improve, open, and grade its streets and sidewalks, and if, in so doing, it exercises reasonable care and skill, it is not answerable to the owner of an adjacent lot, whose land is not actually taken, for consequential damages to his premises, unless such liability is created by its charter, or some statute. If there be such damage it is damnum absque injuria. Town of Harrisonburg v. Roller, 97 Va. 582, 34 S. E. Rep. 523.
Additional Servitude — Damnum Absque Injuria. — The building of an approach to an elevated bridge in the streets of a city, leaving a space of about seven and one-half feet on each side, for the convenience of the public or adjacent owners, when there is no actual encroachment on the property of the abutting land owner, does not create any additional servitude on the land, and is not a “taking” of private property, within the meaning of article V, section 14, of the Constitution of Virginia, though the use of the property may be thus impaired. The resulting damage, if any, is damnum absque injuria. And it is immaterial whether the fee in the street is in the city, the state, or the abutting land owner. Home Building, etc., Co. v. Roanoke, 91 Va. 52, 20 S. E. Rep. 895.
Additional Servitude — Steam Railway — Measure of Damages. — In Stewart v. Ohio River R. Co., 38 W. Va. 438, 18 S. E. Rep. 604, it was held that, where a railroad is laid down in a public street, the abutting’property is damaged, within the meaning of section 9, art. 3, of the constitution, to the extent of the depreciation caused by the construction and operation of the road. The measure of the damages is such a sum as will make the owner whole, — that is, the depreciation of the market value of the abutting property, caused by the railroad company laying their track and running their trains in the street. In such case, if the fair market value of the abutting property is as much immediately after the construction of the railroads as it was immediately before- such improvement was made, no damages are sustained for which a recovery can be had.
Additional Servitude — Steam Railway. — Owners of lots abutting on streets own the fee in the land to the middle of the street, subject to the rights of the public to travel over it Locating á railroad track on the street is an additional burden, which cannot be imposed without compensation to the owner. Hodges v. S. & R. R. Co., 88 Va. 653, 14 S. E. Rep. 380-
Additional Servitude — Erection of Telegraph Poles and Wires. — Condemnation of land for public highways gives only right of passage over it. The abS'o-i lute property in the land remains in owner. Erection of telegraph poles and wires constitutes an additional servitude on the land. Act February 10, 1880 (Code, sec. 1287-1290), authorizing construction of telegraph lines along any public road, if the use of the highway be not obstructed, without providing any compensation to the land owners, vio *292 lates the constitutional intention when taking-private property for public use without compensation. Western Union Tel. Co. v. Williams, 86 Va. 696, 11 S. E. Rep. 106.
Additional Servitude — Street Railways. — The substitution of a double track electric street-car line for a single track horse-car line is not an additional servitude or burden on the street for which the abutting- lot owners are entitled to compensation. Reid Bros. & Co. v. Norfolk City R. Co., 94 Va. 117, 26 S. E. Rep. 428. See also, on this subject, 5 Va. Law Reg. 477.
Additional Servitude — Compensation. —Owners of lots abutting on streets own the fee in the land to the middle of the street, subject to the rights of the public to travel over it. Locating a railroad track on the street is an additional burden, which cannot be imposed without compensation to the owner. Hodges v. S. & R. R. Co., 88 Va. 653, 14 S. E. Rep. 380.
Damage Resulting from Change of Grade — Measure of Damages. — in an action against a municipal corporation for damage to a lot from change of grade of a street, the measure of damages is the difference between the market value of the lot immediately before and immediately after the change. McCray v. Town of Fairmont (W. Va.), 2 Mun. Corp. Cas. 323.
Change of Grade Causing Damage by Surface Water —Liability of Municipality. — A municipal corporation is not liable for damages to a lot by reason of change of a street's grade operating upon surface water, though it máy Increase it; but if the. work operates, as its' direct effect, to collect and cast water in a mass on the lot, the corporation is liable. McCray v. Town of Fairmont (W. Va.), 2 Mun. Corp. Cas. 323.
Drainage — Liability for Failure to Drain. — If a city or town negligently fails to keep its existing drains and gutters open and clear of obstructions, and in condition to carry off the water in them, and by reason thereof land is injured from their overflow, the city or town is liable in damages, provided the overflow is not due to an unusual or extraordinary storm or rainfall. Clay v. City of St. Albans, 43 W. Va. 539, 27 S. E. Rep. 368.
If a city or town, by gutters, drains, or otherwise, collect surface water and cast it in a body on land, it is liable in damages. Clay v. City of St. Albans, 43 W. Va. 539, 27 S. E. Rep. 368.
Drainage — Change of Street Grade — Injuries to Adjoining Lot. — Where a town, in grading its streets raises its grade so as to cast the surface water on an adjoining lot occupied by a store room, if the grade of such street is not raised in violation of the constitution, or some statute law, or the charter of the town, no action can be maintained by the adjoining lot owner for damages sustained by reason of casting said surface water on said adjoining lot, unless the surface water is collected in a body and cast upon said lot. Yeager v. Town of Fairmont, 43 W. Va. 259, 27 S. E. Rep. 234.
' Liability to Lot Owners for Discharge of Surface Water. — A city is not liable for damages to a lot owner because change of grade of a street prevents surface water of the lot from flowing off. It is not different even if the surface water is, by reason of such change of grade, increased in quantity upon the lot, if not cast in a mass or body upon the premises. Nor is a city liable for mere surface water flowing from a street upon an adjoining lot. Jordan v. City of Benwood, 42 W. Va. 312, 26 S. E. Rep. 266.
A city cannot by ditches, drains, or other artificial channels collect surface water, and cast it in a’ body or mass upon a lot. If it does so, it is liable to the lot owner in damages. Jordan v. City of Benwood, 42 W. Va. 312, 26 S. E. Rep. 266.
The provision, in section 9, art. 3, of the constitution, that private property shall not be taken or damaged for public use without just compensation, does not render a city liable for damages to property from surface water where a private individual would not be liable. Jordan v. City of Benwood, 42 W. Va. 312, 26 S. E. Rep. 266.
Improvement of Streets — Legitimate Delegation of Power. — it is not an undue delegation of power for a municipal corporation to confide to the street committee the execution of work, where the work has been ordered, and the manner of its execution prescribed, by the council. Town of Harrisonburg v. Roller, 97 Va. 582, 34 S. E. Rep. 523.
IV. CHARTERS AND ORDINANCES.
A. Charters.
Construction of Charters. — It is a well settled rule of construction of legislative grants to public or private corporations, that they can exercise only such powers as are conferred expressly or impliedly by the act, and that in all cases of ambiguity, the doubts shall be resolved in favor of the public. Roper v. McWhorter, 77 Va. 214.
Conflict between General Law and Charter. — A general power of taxation “in accordance with the constitution and laws of the state,” means ageneral power not repugnant to, or inconsistent with, the constitution and laws, and is not restricted by the provisions of sec. 1042 of the Code. But if there is a conflict between sec. 1042 of the Code and the charter of a municipality, the charter prevails, as provided by sec. 1048. City of Norfolk v. Norfolk Landmark Publishing Company, 95 Va. 564, 28 S. E. Rep. 959.
Construction of Charter — Erection of Public Build° ings. — The provision of a city charter which requires all contracts for the erection of public improvements or buildings tobe let to the lowest responsible bidder, does not inhibit the city from constructing public buildings or improvements under the direction of its own engineers or officers, but applies only to such buildings or improvements as are let to contract. Home Building, etc., Co. v. Roanoke, 91 Va. 52, 20 S. E. Rep. 895.
Construction of Charter — Improvement of Streets.— The grant to a city by its charter of power “to close or extend, widen or narrow, lay out, graduate, curb and pave, and otherwise improve the streets, sidewalks,'and public alleys in said city,” and also to “build bridges in and culverts over said streets” is a sufficient grant of authority to build an approach to an elevate# bridge in its streets. The approach is but the grading of the street to adapt it to the use and need of the public. Home Building, etc., Co. v. Roanoke, 91 Va. 52, 20 S. E. Rep. 895.
Construction of Charter — Ordinance Imposing upon Abutting Owners Burden of Paving Street — Validity.— The provision of the charter of the city of Bristol, authorizing sidewalks and gutters along any street to be paved or improved at cost of abutting owners, does not authorize the city to impose by ordinance, upon such owners, the burden of paving the entire width of the street in front of their respective properties. McCrowell v. City of Bristol, 89 Va. 652, 16 S E. Rep. 867.
Amendment of Charter — Construction of Statute. — A statute amending the charter of a town containing *293 ■upwards of 2,000 population, which takes from another town of less population than 2,000 some of its territory, is not a special act amending- the charter of a town of less population than 2,000, prohibited by section 39, art. 6, of the constitution. Roby, Mayor, v. Sheppard, Mayor, 42 W. Va. 286, 26 S. E. Rep. 278.
Forfeiture of Charter. — A forfeiture of the charter of a municipal corporation cannot be enforced or taken advantage of in any legal proceeding collaterally or incidentally. That forfeiture must be declared in a proper, direct way. The state only can enforce such forfeiture, as it alone has the right to waive or enforce it. Hornbrook v. Town of Elm Grove, 40 W. Va. 543, 21 S. E. Rep. 851.
B. Ordinances. — City ordinances, to be valid, must be reasonable. An unreasonable by-law is void. Where the charter expressly grants a power, but prescribes neither the time nor the mode of its exercise, it must be exercised in a mode and at a time deemed reasonable by the court. Kirkham v. Russell, 76 Va. 956.
In Mayo v. James, 12 Gratt. 17, it was held not illegal to affix the punishment of stripes to the violation of a city ordinance by a free negro.
Ordinance to which land owner refused assent, allowing him to build across the drain to be cut through land proposed to be condemned for the purpose, cannot be considered in assessing the damages. Roanoke City v. Berkowitz, 80 Va. 616.
Ordinances —Selling Liquor on Sunday. — An ordinance of the city of Richmond provides that every hotel keeper, and keeper of a restaurant, lager beer saloon, or other place where ardent spirits, beer, cider or other drinks are sold or given away, shall close the bar where such drinks are sold or given away every Sunday during the whole day, * * * and any person violating any provision of this section shall be fined n ot less than ten nor more than $500. The act of March 6, 1874, ch. 83, p. 76, enacts “that no intoxicating drinks shall be sold in any bar-room, restaurant, saloon, store or other place within the limits of this commonwealth from 12 o'clock on each and every Saturday night of the week, until sunrise of the succeeding Monday morning.” And the penalty for a violation of this act is a fine of not less than ten nor more than $500, and at the discretion of the court of a forfeiture of his license; “provided that this law shall not apply to any city having police regulations on this subject, and an ordinance inflicting a penalty equal to the penalty inflicted by this statute’’ — held, that the ordinance is not the same as to the statute, either in the specification of the offence or in the penalty, so as to bring it within the proviso of the statute; and therefore a prosecution for a violation of the act may be sustained. Thon v. Com., 31 Gratt. 887. See also, monographic note on “Intoxicating Liquors,” 31 Gratt. 887.
Ordinances — Buildings.—A city ordinance forbids any person to erect any building outside the fire limits and within thirty feet of any building not his own, except of such materials as are allowed for buildings inside said limits. C. added a story to a house out of prohibited material. Held, he violated the ordinance. Carroll v. City of Lynchburg, 84 Va. 803, 6 S. E. Rep. 133.
Ordinance — Renting Market Stalls at Auction — Fees of Auctioneer. — A city ordinance which authorizes an officer to rent stalls in the market house at public auction does not authorize him to employ an auctioneer at the expense of the city. He is limited to his salary as compensation for all duties to be performed by him, unless otherwise provided, either expressly or by necessary implication. A renting at public auction simply required it to be made in public to the highest bidder. A regular auctioneer was wholly unnecessary to the validity of the renting. City of Norfolk v. Pollard, 94 Va. 279, 26 S. E. Rep. 832.
Violation of Ordinance. — Violation of the public ordinance of cities, towns, and villages are strictly criminal in nature, being offenses against the public, and not merely private wrongs. In prosecutions for such offences, costs are not recoverable against such city, town, or village. City of Charleston v. Beller, 45 W. Va. 44, 30 S. E. Rep. 152.
Ordinances- Repeal by Implication. — A subsequent municipal ordinance, fully covering the subject-matter of a previous ordinance, being a substitute therefor, repeals the former by implication, without words to that effect. Knight v. Town of West Union, 45 W. Va. 194, 32 S. E. Rep. 163, 1 Mun. Corp. Cas. 218, and note.
V. OFFICERS AND GOVERNING BODIES.
Appointment of Town Officers —The legislature incorporating a town may appoint the officers to exercise their functions nntil a regular election, notwithstanding constitution, art. 6, §20, provides that town officers shall be electors of such towns, councilmen so appointed and exercising their functions, are defacto officers, and their acts in levying a license tax. authorized by the charter, are binding, even though one of them, after moving beyond the corporate limits, continued to perform his official duties and participated in .said acts. Roche v. Jones, 87 Va. 484, 12 S. E. Rep. 965.
Qualifications of Officers. — Acts of Assembly (Acts 1883-4, p. 57), amending charter of city of Portsmouth, provides that qualifications of any person or persons elected as councilman, shall be adjudged of by the council, and determined by a majority vote thereof. Held, this provision applies only to the case of a contested seat. Jobson v. Bridges, 84 Va. 298, 5 S. E. Rep. 529.
Official Bonds — Liability of Sureties. — Sureties on an official bond are liable for money in the hands of their principal at the date of the bond, provided such money forms a part of the fund which the bond was intended to secure, and came to the hands of the principal obligor in the course of a precedent term of office or employment. If they make the defense that the money was collected or otherwise came into the hands of the principal before the execution of the bond, it is incumbent upon them to show also that it was misapplied before that time. Town of Parsons v. Miller, 46 W. Va. 334, 32 S. E. Rep. 1017, 2 Mun. Corp. Cas. 590, and note.
City Council — Powers—Removal of Corporate Officer. —In Richards v. Town of Clarksburg, 30 W. Va. 491, 4 S. E. Rep. 774, it was held, that every town and village in this state, incorporated under the provisions of chapter 47 of the Code, or to which they apply, is a municipal corporation possessing all the powers incident to such corporations at common law, not changed, abolished, or prohibited by statute. The corporate powers of every such municipal corporation can only be exercised by the common council thereof, or under its authority, except where others wise provided by law. The “corporate body at large” of every such incorporated town or village, in the exercise of its corporate powers, is represented by the “common council’’thereof. The power to remove *294 a corporate officer from Ms office is one of tlie common-law incidents of all corporations.
City Council — Passage of Ordinances. — If tlie charter of the city requires that an ordinance providing for the opening, grading, etc., of streets shall he passed hy a vote of three-fourths of each branch of the council, if the present ordinance was not so passed, yet if it is an amendment of a prior ordinance giving substantially the same powers to the council, the act of the council will be sustained. Sands, Receiver, v. City of Richmond, 31 Gratt 571.
Authority of City Council — Grade of Streets.— Changes in grade of streets can be made only by authority of city council previously given, and changes made therein without such authority cannot be validated by subsequent ratification. Page v. Belvin, 88 Va. 985, 14 S. E. Rep. 843.
Sale of City’s Real Estate. — A city council cannot delegate to a committee its authority to sell the city’s real estate. Beal v. City of Roanoke, 90 Va. 77, 17 S. E. Rep. 738.
Authority of De Facto Officers. — The acts of defacto municipal officers, within the scope of their authority and under color of law, are valid and binding, in the absence of clear proof that they are not de jure officers of such municipality. Knight v. Town of West Union, 45 W. Va. 194, 32 S. E. Rep. 163, 1 Mun. Corp. Cas. 219, and note.
City Council — Jurisdiction.—Where facts essential to give a town council jurisdiction appear in its proceedings, its jurisdiction is not open to collateral attack. Shank v. Town of Ravenswood, 43 W. Va. 242, 27 S. E. Rep. 223.
Powers of Hayor. — The chief of police of a city is the officer of the state, and not of the municipality in which he exercises his office. Though under the constitution of the state, article 6, § 2Ó, the mayor has authority to remove the officers of the municipality, the constitution does not invest him with the power to remove state officers, though they are elected by the people of the municipality or appointed by the municipal authorities, and are paid by them. The charter of a city having provided for aboard of police commissioners, and vested in them the power of removing the chief of police, only giving to the mayor the power of suspending the said officer for a short time, if the mayor removes the officer from his office he exceeds his power and is responsible to the officer in a civil action for damages. Burch v. Hardwicke, 30 Gratt. 24, 32 Am. Rep. 640.
Jurisdiction of Hayor. — Petitioner was arrested and brought before the mayor of C. for violation of city ordinance in selling beer without license within one mile from the corporation limits. He was tried and convicted by the mayor, and fined $50 and costs; and was committed to the street commissioner, to work out his fine. The warrant for his arrest was issued by the recorder, but it did not appear whether he was arrested within or without the city limits. He obtained from the circuit court a writ of habeas corpus. The return made by the mayor disclosed the facts, and alleged that petitioner had violated said ordinance. Petitioner demurred to said return, and on the hearing the circuit court dismissed the writ with costs. Held, under the charter of the city, and the West Virginia statutes relating to licenses by cities, etc., that the mayor of the city of C. had jurisdiction to hear and determine said cause, and the circuit court properly overruled said demurrer, and dismissed the writ. Flack v. Fry, 32 W. Va. 364, 9 S. E. Rep. 240.
V!. PLEADING AND PRACTICE.
A. Statute of Limitations as against Hunicipalities.— Owing to the dual character of municipal corporations — the one private and the other public,— a distinction is drawn by the courts in regard to the running of the statute of limitations against them. Wherever, a municipality sues in its proprietary character, it is held that the statute is as much applicable as against individuals. It is only where the municipality sues in. a strictly public character, as an agency of the people, that the maxim nullum tempus occurrit reoi is applicable. Yates v. Town of Warrenton, 84 Va. 337, 4 S. E. Rep. 818; Taylor v. Com., 29 Gratt. 780; Norfolk v. Chamberlaine, 29 Gratt. 534; Manchester, etc., Co. v. Manchester, 25 Gratt 825, 5 Va. Law Reg. 470.
Application of Haxlm “Nullum Tempus Occurrit Regi. —When dedication has become complete and irrevocable, no obstruction of the subject of the dedication, and no encroachment upon it by the original owner or any one else, for any length of time, will affect the dedication, or impair the rights of the public to it, unless the land so dedicated has been abandoned by the public, or by the proper authority. Time does not run against the state, nor bar the right of the public. In the case at bar the dedication was complete, and there has been no abandonment. Buntin v. City of Danville, 93 Va. 200, 24 S. E. Rep. 830.
Strict Interpretation of Maxim “Nullum Tempus Oc= currit Regi.” — In Ralston v. Town of Weston, 46 W. Va. 544, 33 S. E. Rep. 326, the syllabus by the court was asfollows: “(1) If an original owner of a tract of land lays the same off into town lots, with streets and alleys between, and has the same so platted, and sells the lots with reference to such streets and alleys as boundary lines of the same, and such plat is adopted by the corporate authorities of the town in which such lots are situated, a purchaser of one of such lots is estopped from denying the dedication of such streets to public use. (2) The statute of limitations runs against the state and municipal corporations, as against individuals in all similar cases. (3) The maxim, ''nullum tempus occurrit reoi,' applies to all the sovereign rights and property of the people of the state dedicated to public uses, and of which they cannot be deprived otherwise than according to their express will and appointment. (4) The public easement in the public highways, including roads, streets, alleys, and other public thoroughfares, dedicated to the use of the general public by individuals, or under the right of eminent domain, is such property, and cannot be lost to the people by the negligence of public officials or the unlawful acts of individuals. (5) An individual cannot destroy such easement by setting up a claim by the prescription, adverse possession under the statute of limitations, or equitable estoppel, as the people cannot be deprived of their sovereign rights in any of these ways. (6) The opinions of judges of this court in the cases of City of Wheeling v. Campbell, 12 W. Va. 36; Forsyth v. City of Wheeling, 19 W. Va. 318, and Teass v. City of St. Albans, 38 W. Va. 1, 17 S. E. Rep. 400, in so far as they hold that the public easement in the public highways of this state is subject to the bar of the statute of limitations, are disapproved. (7) It is the expressed will of the people of this state that private property shall not be taken or damaged for public use by governmental officers or agencies, without just compensation.”
*295 B. fliscellaneous natters of Procedure.
Action for Injury Resulting from Defect in Streets or Sidewalks — Declaration. — A declaration, in a case against a city for personal injury by reason of a defect in a street crossing, alleging tliat the plaintiff fell, and thereby was “greatly injured, bruised, wounded, and crippled,” is not bad because it does not state the particular injury, as a broken leg, for instance. Where special damages consequent on the particular injury are claimed, it seems otherwise. Yeager v. City of Bluefield, 40 W. Va. 484, 21 S. E. Rep. 752.
In an action against a city for injuries alleged to have resulted from its negligence in unlawfully permitting a sidewalk to be obstructed, the declaration set forth in detail the character of the action, and the circumstances leading to it, and alleged that plaintiff thereby had his right arm broken between the elbow and shoulder, and became sick, sore, lame, diseased, and disordered, and so remained from thence hitherto, during all of which time he thereby suffered and endured great pain, and was prevented from attending to and transacting his necessary and lawful game business, and was forced to give it up, and was also disabled from pursuing any business requiring the use of his right arm, and that he had been obliged to expend $500 to get cured of his wounds, sickness, etc. Held, that the declaration gave defendant complete notice of the nature and character of plaintiff’s claim, and that no further bill of particulars was required. City of Richmond v. Leaker (Va.), 37 S. E. Rep. 348.
The averment that a person, while passing over a public brick sidewalk in bad repair, rough, uneven, sideling, and slippery, caught his foot against a projecting brick, and fell down, injuring himself, does not state a sufficient cause of action, as such acci-, dents are liable to occur with the old and feeble, careless and indifferent, at almost any place or time. Waggener v. Town of Point Pleasant, 42 W. Va. 798, 26 S. E. Rep. 352.
Necessary Allegations. — In Chapman v. Town of Milton, 31 W. Va. 384, 7 S. E. Rep. 22, it was held that the statute (section 53, c. 43, W. Va. Code) imposes an absolute liability upon cities, villages, and towns for injuries sustained by reason of the failure of the municipal authorities to keep in repair those streets, sidewalks, etc., within the corporate limits, which its authorities have opened or controlled and treated as public streets, sidewalks, etc., and therefore, in an action against a town by a person injured by a defective sidewalk, he is not required to allege in his declarations, or prove at the trial, that the defendant had notice of the defect or want of repair in such sidewalk. But in order to entitle the plaintiff to recover in such action, he must allege and prove that the street or sidewalk upon which the injury occurred was, at the time and place where the injury was sustained, controlled and treated by the town authorities as the public street or sidewalk, and opened as such.
A declaration against a municipal corporation for damages from ilowage of water upon a lot from a change of grade of a street must allege that by the work, water was collected and cast in amass upon a lot. McCray v. Town of Fairmont (W. Va.) 2 Mun. Corp. Cas. 323.
Action on Bonds — Allegation as to Limit of Indebted-* ness. — in assumpsit against a municipal corporation to recover on interest coupons attached to bonds issued under legislative authority in aid of a railroad, the declaration need not allege specially that in issuing the bonds there was a compliance with the constitutional provision limiting the power of municipal corporations to incur indebtedness, and requiring a vote before the issue of bonds, etc.; a failure to comply with the provision being a matter of defense. Brown v. Town of Point Pleasant, 36 W. Va. 290, 15 S. E. Rep. 209.
Declaration — Specification of Damage Resulting from Grading Street. — Where the specification of damages is rested in the declaration only upon the elevation of the grade of the street from which, as alleged, it results that plaintiff is obliged to maintain a wall to prevent earth falling from the street on his premises; that ingress and egress is made inconvenient and unsafe; that the value of his premises is diminished; that his business has been injured, and that the flow of rain-water upon his premises causes further damages, a demurrer will lie. Kehrer v. Richmond City, 81 Va. 745.
Suit against Municipality for Allowing Nuisance-Sufficiency of Declaration. — A declaration filed against a municipal corporation in an action on the case, which avers that the common council authorised the plaintiff to erect a carpenter shop on a certain lot within such municipality, with the knowledge that a steam engine would be necessary in running the machinery connected with such shop, and that after the erection of such shop the council modified such permit so as to forbid the use of such steam engine therein, to the great damage and loss of the plaintiff, states no sufficient cause of action against such municipality. Wood v. City of Hinton (W. Va.), 3 Mun. Corp. Cas. 547.
Suit against Town In Corporate Name. — A suit to enjoin the collection of municipal taxes, on the ground that they were illegally imposed by reason of want of authority to impose them from forfeiture of the municipal charter, is not wrongly brought, from the mere fact that the town is sued in its corporate name. So bringing the suit does not admit its continued existence. Hornbrook v. Town of Elm Grove, 40 W. Va. 543, 21 S. E. Rep. 851.
Suit against Municipality — Process — Delivery—Bill Taken for Confessed. — If, in a suit against an incorporated town, the process be executed by delivering a copy thereof to its mayor, he is not thereby made a party to the suit; and if such town fail to answer the bill it will be taken for confessed against it, although the mayor has filed an answer in the cause. Miller v. Town of Aracoma, 30 W. Va. 606. 5 S. E. Rep. 148.
Right of Taxpayer to Restrain Ultra Vires Acts.— The right of taxpayers to resort to equity to restrain municipal corporations and their officers, and Quasi corporate bodies and their officers from transcending their lawful powers or violating their lawful duties in any way injuriously affecting the taxpayers, such as making unauthorized appropriations of the corporate funds or an illegal disposition of the corporate property, is well established. "Without legislative authority they cannot lease or alien any franchise necessary to perform its obligations and duties to the state. Roper v. McWhorter, 77 Va. 214.
Where a suit is brought by a landholder against an incorporated town, to enjoin it from opening a public alley through his land without having first condemned the same for public use, according to law, the owner of a lot adjoining such proposed alley, who has been instrumental in moving the public authorities of such town to open such alley, may properly be joined with such town as a defend *296 ant in such. suit. Miller v. Town of Aracoma, 30 W. Va. 606, 5 S. E. Rep. 148.
Any tax-paying1 resident and voter of a city may sue on behalf of himself and all other taxpayers to enjoin the creation of any indebtedness by the city in excess of the constitutional limit. Spilman v. City of Parkersburg, 35 W. Va. 605, 14 S. E. Rep. 279.
Suit by One or More Taxpayers to Enjoin Hunicipal Corporation from Levying Illegal Tax, or Incurring an Unauthorized Debt. — Courts of equity have jurisdiction, on the application of one or more taxpayers of a municipal corporation, suing for the benefit of themselves and all others similarly situated, to enjoin the corporation and its officers from levying and collecting an 'unauthorized tax, or creating an unauthorized debt. It is immaterial whether the debt was wholly unauthorized, or authorized only upon conditions which have not been complied with, or that the securities for it would be void in the hands of an innocent holder. Lynchburg & Rivermont Street-Railway Co. v. Dameron, 95 Va. 545, 28 S. E. Rep. 951.
Remedy against Illegal Tax. — By a long course of decisions it has been settled that the remedy against an attempt to coerce the payment of an illegal tax is by injunction. City of Richmond v. Crenshaw, 76 Va. 936.
If a municipal corporation taxes property beyond the limit fixed by the organic law conferring the power to tax, a court of equity will enjoin the collection of the amount illegally assessed. Tygart’s Val. Bank v. Town of Philippi, 38 W. Va. 219, 18 S. E. Rep. 489.
Trespass by Corporation — Injunction.—The remedy for illegal entry by a corporation on lands is by injunction; and plaintiff is not required to show a case of destructive trespass or irreparable damage. The slightest excess of power is sufficient. Hodges v. S. & R. R. Co., 88 Va. 653, 14 S. E. Rep. 380.
Compensation Due Officer of City — Mandamus.—Mandamus will not lie to compel the issue of an order for the payment of compensation due to an officer of a city, where such compensation has not been provided for by statute or ordinance, or is in any wise discretionary. City of Richmond v. Epps (Va.), 35 S. E. Rep. 723.
Enjoining Abatement of Nuisance by Municipality.— Equity may restrain the proceedings of a municipal corporation to abate a nuisance, where those proceedings encroach upon private rights, and are productive of irreparable injury. Bristol Door & Lumber Co. v. City of Bristol (Va.), 2 Mun. Corp. Cas. 548, and note.
Mandamus to Compel Levy of City Taxes. — The duty of levying taxes to pay the debts of a city is a corporate duty of the city council, which it may be compelled to perform by mandamus. The members of the council in their capacity of councilmen may be proceeded against for contempt, for failure to obey an order of a court of competent jurisdiction directing a levy to be made, but an order directing the councilmen to make the levy is none the less an order to the city council in its corporate capacity. To such an order the councilmen in their corporate capacity alone can apply for a writ of error. Osborne v. Kammer, 96 Va. 228, 31 S. E. Rep. 19.
Commissioners’ Report — Quashing.—Report of commissioners to condemn land for municipal purposes will not be quashed on the ground that a commissioner appointed, at the instance of the municipality, was interested, where the record does not show that the municipality was ignorant that he was interested when so appointed. Ignorance of the attorney makingmotion for the appointment, is not evidence of the municipality’s ignorance that the commissioner was interested. But if commissioner was interested and disqualified, and municipality was ignorant, report will not be quashed, if record shows that the damages assessed are not excessive. Roanoke City v. Berkowitz, 80 Va. 616.
Constitutionality of Municipal Ordinance — Appellate Jurisdiction. — To call forth the jurisdiction of the court of appeals upon the question of the constitutionality of a law or municipal ordinance, it is not necessary that it specially* appear in the record by some appropriate plea or other proceeding that such question was raised and decided in the lower court, but such jurisdiction may arise from any proceeding which necessarily puts the constitutionality of such laws or ordinance in issue, whether it be a demurrer, plea, instruction, or otherwise. Adkins v. City of Richmond (Va.), 3 Mun. Corp. Cas. 514.
Conviction by City Council — Appeal.—Const, art. 8, § 3, giving the supreme court of appeals appellate jurisdiction in cases of certiorari, and not the clause fixing the court’s jurisdiction by the value of the matter in controversy, determines the court’s jurisdiction when error is brought on the ground that the circuit court refused defendant a writ of certiorari on a conviction by a town council for maintaining a nuisance. Town of Davis v. Davis, 40 W. Va. 464, 21 S. E. Rep. 906.
Conviction of City Council t- Certiorari. — Where a person accused of maintaining a nuisance feels aggrieved by the decision of a town council, his remedy, if the statute gives no appeal, and no question is made that the statute is unconstitutional, or that the town authorities did not have jurisdiction of the subject-matter, is by cei'tiorari, and not by prohibition. Town of Davis v. Davis, 40 W. Va. 464, 21 S. E. Rep. 906.
A proceeding by a town council against a person for maintaining a nuisance is judicial in its character, and the decision is subject to review. Town of Davis v. Davis, 40 W. Va. 464, 21 S. E. Rep. 906.
Abatement of Nuisances by City Council — Equity Jurisdiction. — Where the law gives the council of a town ample power to abate nuisances, and the council gives the person charged with maintaining the nuisance opportunity to be heard, it is unnecessary to resort to a court of equity for relief. Town of Davis v. Davis, 40 W. Va. 464, 21 S. E. Rep. 906.
Abatement of Nuisances by City Council — Procedure. —Under Code,- c. 47, § 28, giving the.council of a town power to abate a nuisance, but not prescribing the methods of procedure, upon a petition signed by 50 residents, supported by two affidavits fully describing the alleged nuisance, a merry-go-round, and praying that the owner might be summoned before the town council, a summons signed by the mayor only in the nature of an order to show cause, and reciting the facts set out in the petition, was issued. Held, that the procedure and summons were sufficient. A summons in the nature of an order to show cause, issued by a town council to a person charged with keeping a nuisance, not being a writ or process, within the meaning of Const. art. 2, § 8, need not run in the name of the state. Town of Davis v. Davis, 40 W. Va. 464, 21 S. E. Rep. 906.
Abatement of Nuisances by City Council — Quorum.— Code, c. 47, § 28, giving the council power to abate anything which, in the opinion of a majority of the whole council, shall be a nuisance, does not require *297 the recorder, or more than a majority of the council, to be present at the hearing- of a petition to abate a nuisance. Town of Davis v. Davis, 10 W. Va. 464, 21 S. E. Rep. 006.
Nuisances — Abatement by City Ordinance —Police Power. — Storage of gunpowder in a city being dangerous, its regulation is a matter within the power of the corporate authorities, and their judgment, as expressed in an ordinance requiring the removal of powder magazines, is conclusive upon the courts. An ordinance requiring the removal of powder magazines in a city, the sites whereof were sold by the city council to vendees for the purpose of erecting thereon such magazines, does not impair the obligation of a previous valid contract with that council and does not take private property without compensation: but is constitutional, being a valid exercise of the police power. Davenport v. Richmond City, 81 Va. 636.
Local Assessments under Statutory Authority — Necessary Allegations in Bill to Enforce. — An act of the legislature which authorizes a municipality to assess two-thirds of the expense of paving a street and the whole expense of constructing a sewer against the abutting property owners is constitutional and valid. It is only necessary, in a bill in equity to enforce .such an assessment, to set out and allege a substantial compliance with the statute. City of Parkersburg v. Tavenner, 42 W. Va. 486, 26 S. E. Rep. 179.
Action for Injury from Defective Street — -Proof That Street Was Recognized as Such by Municipal Authorities.--Code W. Va. 1887, c. 43, §53, imposes an absolute liability upon cities, villages, and towns forinjuries sustained by reason of the failure of municipal authorities to keep in repair the streets, sidewalks, etc., within the corporate limits, provided its authorities have opened or controlled such street or sidewalk where the injury was sustained, as a public street or sidewalk. Held, that plaintiff must allege and prove that the street or sidewalk upon which the injury occurred at the time and place when the injury was sustained was controlled and treated by the municipal authorities as a public street or sidewalk. and opened as such. Biggs v. City of Huntington, 32 W. Va. 55, 9 S. E. Rep. 51.
Injury from Defective Sidewalk — Contributory Negligence- -Question for Jury. — in an action againsta city for personal injuries alleged to have been caused by a defective sidewalk, plaintiff testified that she stepped over an offset about one foot in height, which conducted from a newly-laid pavement to the original plank walk upon an adjoining lot, which had not yet been removed or relaid; that she did not know of the defect, and had no opportunity for discovering it; that the night was dark, and that there was no light. Plaintiff was corroborated by two witnesses, and one witness for the defense testified that there was an offset of eight inches. Held, that plaintiff made out aprima facie case, under Code. c. 43, § 58, and that, the evidence being conflicting, the question of con tributory negligence wavS for the jury, and a verdict for plaintiff would not be disturbed. Moore v. City of Huntington. 31 W. Va. 842, 8 S. E. Rep. 512; Phillips v. City of Huntington, 35 W. Va. 406, 14 S. E. Rep. 17: Bowen v. City of Huntington. 35 W. Va. 682; 14 S. E. Rep. 217, followed; Snoddy v. City of Huntington, 37 W. Va 111, 16 S. E. Rep. 442.
Injury from Defective Street — Evidence - -Question for Jury, —in an action against a city for injuries caused by a defective sidewalk, it appeared that the plaintiff knew that the sidewalk was out of repair and dangerous; audit also appeared that the injury to the plaintiff was not necessarily caused by the open and apparent defects in the sidewalk, or any want of due care on her part, but may have been caused by a latent defect, for which the city was responsible, and which the plaintiff could not have detected by any reasonable prudence or care. Held, it was proper to submit the plaintiff’s evidence showing these facts to the jury, and to refuse the motion of the defendart to strike out said evidence. Moore v. City of Huntington, 31 W. Va. 842, 8 S. E. Rep. 512.
Action for Injury from Defective Sidewalk — Instructions. — in an action against a city for injuries alleged to have resulted from its negligence in unlawfully permitting a sidewalk to be obstructed, it was error to refuse instructions intended to inform the jury that defendant had a right to permit persons erecting buildings to use a portion of the streets and sidewalks for the deposit of building materials and appliances therein, and that, where they are deposited in a street, and are open and obvious, travelers or pedestrians passing thereby must observe greater care to avoid accident than would otherwise be necessary. City of Richmond v. Leaker (Va.), 37 S. E. Rep. 348.
Action for Injury from Defective Sidewalk — Instructions — Contributory Negligence. — in an action against a city for injuries alleged to have resulted from its negligence in unlawfully permitting a sidewalk to be obstructed, the jury were instructed that the burden of proving defendant guilty of negligence rested on plaintiff, and that, if defendant sought to relieve itself from liability by reason of plaintiff’s contributory negligence, the burden of proving such negligence rested on it. Held, that the instruction should have concluded as follows: “Unless such contributory negligence was disclosed by the plaintiff’s evidence, or could be fairly inferred from the circumstances.” City of Richmond v. Leaker (Va.), 37 S. E. Rep. 348.
Action for Personal Injuriesfrom Defective Sidewalks —Province of Jury. — la an action by a traveller against a city for a personal injury resulting from a defective sidewalk, it is for the jury to determine, upon the circumstances of the particular case, whether the traveller, who previously had knowledge of the defect, had the right to assume that the defect had been remedied, or the city was negligent in having failed to do so. It is error in the trial court to give instructions which invade the province of the jury in these particulars. City of Lynchburg v. Wallace, 95 Va. 640, 29 S. E. Rep. 675.
Suit for Injury from Defective Sidewalk — Contributory Negligence — Burden of Proof. — Where the city, in a suit for injury from defective sidewalks, relies on the defence of contributory negligence, the burden of proof lies on it, but such negligence may be proved by circumstances. Gordon v. The City of Richmond, 83 Va. 436, 2 S. E. Rep. 727.
Evidence — Records of City Council. — Where work or other action of city authorities is claimed to have been done by its authority, the records of the city council are the proper and best evidence, if existent and accessible. Jordan v. City of Benwood, 42 W. Va. 312. 26 S. E. Rep. 266.
Evidence — Certificate of Recorder. — The certificate of a recorder of an incorporated town, stating facts which appear upon the records of the common council of said town, and not certifying copies from such records, is not admissible as evidence. Roe v. Town of Philippi, 45 W. Va. 785, 32 S. E. Rep. 224.
*298 Evidence — Corporate Books. — The corporation, "books concerning the government of a city, town, or village, when they have been publicly kept, and the entries have been made by a proper officer, as well as duly authenticated copies therefrom, are admissible evidence of the facts witnessed in them. Town of Parsons v. Miller, 46 W. Va. 334, 32 S. E. Rep. 1017, 2 Mun. Corp. Cas. 590, and note,
. Burden of Proof in Action on Municipal Bond Given for Purchase of Real Estate. — In an action against a municipal corporation on a bond, or other common-law security given for deferred payments on real estate purchased by the corporation, the defendant’s plea of nil debet puts the burden of proof on the plaintiff to show that the real estate purchased by the defendant was reasonably necessary to the proper exercise and enjoyment by it of the powers and duties conferred upon it by its charter. Richmond, etc., Co. v. West Point, 94 Va. 668, 27 S. E. Rep. 460.
. Action of Trespass on the Case against City for Damages Resulting from Change of Grade — What flay Be Shown under General Issue. — In an action of trespass on the case against a city for damage to a lot situated in a town by reason of a change of the grade in front of it, the defendant may show, under the general ■issue, that the plaintiff agreed, at the time the grade was being changed, that, if defendant laid a sewer through his lot to a point indicated by him, he would claim no damage by reason of such change, and may also show- that said sewer was constructed in accordance with the agreemen t, and accepted by the plaintiff. In an action of trespass on the case to recover damage of the character asserted in this case, the defendant may give in evidence, under the general issue, a release, or accord and satisfaction, or whatever would, in equity and good conscience, according to the existing circumstances, preclude the plaintiff from recovering, as any matters which operate a discharge of the cause of action or any justification or excuse. By this plea, all the material averments of the declaration are put in issue. Ridgeley v. Town of West Fairmont, 46 W. Va. 445, 33 S. E. Rep. 235.